UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

FONTAINEBLEAU LAS VEGAS                        Case No. 09-21481-BKC-AJC
HOLDINGS, LLC, et al.,                         Chapter 11
                                               (Jointly Administered)
       Debtors.

_____/

TURNBERRY WEST CONSTRUCTION, INC.,

       Plaintiff,

vs.                                            Adv. Pro No. 09-01762-BKC-AJC-A

FONTAINEBLEAU LAS VEGAS HOILDINGS, LLC;
AVENUE  CLO FUND, LTD.; AVENUE  CLO II, LTD.;
AVENUE  CLO III, LTD.; AVENUE  CLO IV, LTD.;
AVENUE  CLO V, LTD.; AVENUE  CLO VI, LTD.;
BABSON  CLO LTD. 2004-I; BABSON CLO  LTD. 2004-II;
BABSON CLO LTD. 2005-I; BABSON CLO LTD. 2005-II;
BABSON CLO LTD. 2005-III; BABSON  CLO LTD. 2006-I;
BABSON  CLO LTD. 2006-II; BABSON  CLO LTD. 2007-I;
ARTUS LOAN FUND 2007-I LTD.; BABSON LOAN
OPPORTUNITY , LTD.; JFIN  2007 LTD.;
SAPPHIRE VALLEY CDO I, LTD.; JEFFRIES FINANCE
CP FUNDING LLC; BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND, LTD.; BATTALION  2007-I LTD.;
CANYON CAPITAL ADVISORS, LLC; CASPIAN COR-
PORATE LOAN FUND, LLC; CASPIAN CAPITAL PART-
NERS, L.P.; CASPIAN SELECT CREDIT MASTER FUND, LTD.;
MARINER OPPORTUNITIES FUND, LP; SANDS POINT
FUNDING LTD.; COPPER RIVER  LTD.; KENNECOTT
FUNDING LTD.; NZC OPPORTUNITIES (FUNDING) II, LTD;
GREEN LANE  LTD.; 1888 FUND LTD.; ORPHEUS
FUNDING LLC; ORPHEUS HOLDINGS LLC; LFC2 LOAN
FUNDING LLC; HALCYON LOAN INVESTORS  I LTD.;
HALCYON LOAN INVESTORS CLO II LTD.; HALCYON
STRUCTURED ASSET MANAGEMENT LONG SECURED/
SHORT UNSECURED CLO 2006-I LTD.; HALCYON
STRUCTURED ASSET MANAGEMENT EUROPEAN

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

2008-II B.V.; HALCYON STRUCTURED ASSET MANA-
GEMENT CLO I LTD.; HALCYON STRUCTURED ASSET
MANAGEMENT LONG SECURED/SHORT UNSECURED
2007-I LTD.; HALCYON STRUCTURED ASSET MANA-
GEMENT LONG SECURED/SHORT UNSECURED 2007-2 LTD.;
HALCYON STRUCTURED ASSET MANAGEMENT LONG
SECURED/SHORT UNSECURED 2007-3 LTD.; ABERDEEN
LOAN FUNDING, LTD.; ARMSTRONG LOAN FUNDING,
LTD.; BRENTWOOD CLO LTD.; EASTLAND CLO, LTD.;
EMERALD ORCHARD LTD.; GLENEAGLES CLO, LTD.;
GRAYSON CLO, LTD.; GREENBRIAR CLO, LTD.;
HIGHLAND CREDIT OPPORTUNITIES CDO, LTD.;
HIGHLAND LOAN FUNDING V, LTD.; HIGHLAND
OFFSHORE PARTNERS, L.P.; JASPER CLO, LTD.;
LIBERTY CLO, LTD.; LOAN FUNDING IV LLC; LOAN
FUNDING VII LLC; LOAN STAR STATE TRUST;
LONGHORN CREDIT FUNDING, LLC; RED RIVER CLO,
LTD.; ROCKWALL CDO LTD; ROCKWALL CDO II, LTD.;
SOUTHFORK CLO, LTD.; STRATFORD CLO, LTD.;
WESTCHESTER CLO, LTD.; ING PRIME RATE TRUST;
ING SENIOR INCOME FUND; ING INTERNATIONAL (II) –
SENIOR BANK LOANS EURO; ING INTERNATIONAL (II) –
SENIOR BANK LOANS USD; ING INVESTMENT MANA-
GEMENT CLO I, LTD.; ING INVESTMENT MANAGEMENT
CLO II, LTD.; ING INVESTMENT MANAGEMENT CLO III,
LTD.; ING INVESTMENT MANAGEMENT CLO IV, LTD.;
ING INVESTMENT MANAGEMENT CLO V, LTD.;
ENCORE FUND LP; NUVEEN FLOATING RATE INCOME
FUND; FORTISSIMO FUND; NUVEEN FLOATING RATE
INCOME OPPORTUNITY FUND; NUVEEN SENIOR INCOME
FUND; SYMPHONY CREDIT OPPORTUNITY FUND, LTD.;
SYMPHONY CLO I, LTD.; SYMPHONY CLO II, LTD.,
SYMPHONY CLO III, LTD.; SYMPHONY CLO IV, LTD.;
SYMPHONY CLO V, LTD.; CARLYLE HIGH YIELD
PARTNERS 2008-I,LTD.; CARLYLE HIGH YIELD
PARTNERS V, LTD.; CARLYLE HIGH YIELD PARTNERS
VI, LTD.; CARLYLE HIGH YIELD PARTNERS VII, LTD.;
CARLYLE HIGH YIELD PARTNERS VIII, LTD.;
CARLYLE HIGH YIELD PARTNERS IX, LTD.; CARLYLE
HIGH YIELD PARTNERS X, LTD.; CARLYLE LOAN
INVESTMENT, LTD.; CENTURION CDO VI, LTD.;
CENTURION CDO VII, LTD.; CENTURION CDO 8, LIMITED;
CENTURION CDO 9, LIMITED; CENT CDO 10 LIMITED;
CENT CDO XI, LIMITED; CENT CDO 12, LIMITED;

**BERGER SINGERMAN**
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

CENT CDO 14, LIMITED; CENT CDO 15, LIMITED;
VENTURE CDO 2002 LIMITED; VENTURE II CDO
2002, LIMITED; VENTURE III CDOLIMITED;
VENTURE IV CDO LIMITED; VENTURE
V CDO LIMITED; VENTURE VI CDO LIMITED;
VENTURE VII CDO LIMITED; VENTURE VIII CDO
LIMITED; VENTURE IX CDO LIMITED; VISTA
LEVERAGED INCOME FUND; VEER CASH FLOW,
LIMITED; DUANE STREET CLO I, LTD.; DUANE
STREET CLO II, LTD.;DUANE STREET CLO III, LTD.;
DUANE STREET CLO IV, LTD.; DUANE STREET CLO
V, LTD.; JAY STREET MARKET VALUE I, LTD.;
RIVA RIDGE MASTER FUND, LTD.; MARINER LDC;
GENESIS CLO 2007-I LTD.; BANK OF AMERICA, N.A.;
MERRILL LYNCH CAPITAL CORPORATION;
JPMORGAN CHASE BANK, N.C.; BARCLAYS BANK
PLC; DEUTSCHE BANK TRUST COMPANY AMERICAS;
THE ROYAL BANK OF SCOTLAND PLC; SUMITOMO
MITSUI BANKING CORPORATION; BANK OF SCOTLAND;
HSF NORDBANK AG; MB FINANCIAL BANK, N.A.;
CAMULOS MASTER FUND, L.P.; SERENGETI ASSET
MANAGEMENT, LP; MFC GLOBAL INVESTMENT
MANAGEMENT (US) LLC; FRANKLIN TEMPLETON
INVESTMENTS; GOLDMAN SACHS GLOBAL SITUA-
TIONS GROUP; EATON VANCE MANAGEMENT INC.;
SATELLITE ASSET MANAGEMENT; BANK OF AMERICA
LLC; PRUDENTIAL INVESTMENT MANAGEMENT-FIXED
INCOME; NOMURA CORPORATE RESEARCH & ASSET
MANAGEMENT; DIMAIO AHMAD CAPITAL LLC;
PIONEER INVESTMENT MANAGEMENT INC.;
MFS INVESTMENT MANAGEMENT; NEW YORK LIFE
INVESTMENT MANAGEMENT LLC; REGIMENT CAPITAL
ADVISORS LLC; WESTERN ASSET MANAGEMENT CO.
(WAMCO); JPMORGAN HIGH YIELD PARTNERS;
THRIVENT FINANCIAL FOR LUTHERANS; BLACKROCK
FINANCIAL MANAGEMENT INC.; DENVER INVESTMENT
ADVISORS LLC; FIDELITY MANAGEMENT & RESEARCH;
GOLDMAN SACHS ASSET MANAGEMENT LP (GSAM)(USA);
RIVERSOURCE INVESTMENTS LLC; FEDERAL INVESTORS
INC.; ARES MANAGEMENT, LP; DEUTSCHE ASSET
MANAGEMENT (DEAM) (NYC); TATTERSALL ADVISORY
GROUP INC (PHILADELPHIA); ING INVESTMENT MANA-
GEMENT LLC (ATLANTA); LOGAN CIRCLE PARTNERS LP;
STATE STREET GLOBAL ADVISORS (SSGA); UBI

PRAMERICA SRG SPA; BARCLAYS CAPITAL, INC.;
PPM AMERICA, INC.; BRIGADE CAPITAL MANA-
GEMENT, LLC; CREDIT SUISSE ASSET MANA-
GEMENT AMERICAS (CSAM)(NY); ALLEGIANT
ASSET MANAGEMENT CO.; FAF ADVISIORS,
INC.; INVESCO INC (NEW YORK);
NEWBERGER BERMAN MANAGEMENT LLC;
RICHARD WENZ, and JOHN DOE 1-50,

      Defendants.

_____/

## AMENDED COMPLAINT[1] FOR DECLARATION THAT: (I) THE CERTAIN SUBORDINATION AGREEMENT BY AND BETWEEN TURNBERRY WEST CONSTRUCTION, INC AND THE DEBTORS' LENDERS IS VOID AND UNENFORCEABLE, AND (II) TO  DETERMINE THE STATUTORY LIEN OF TURNBERRY WEST CONSTRUCTION, INC ON ITS OWN BEHALF AND ON BEHALF OF ALL LIEN HOLDERS CLAIMING BY AND THROUGH THE LIEN OF TURNBERRY WEST CONSTRUCTION, INC IS A VALID LIEN <u>SUPERIOR TO THE LIENS OF THE LENDERS</u>

Plaintiff, Turnberry West Construction, Inc. ("TWC"), by and through undersigned

counsel, sues Fontainebleau Las Vegas LLC ("FBLV") as owner and developer, Bank of

America N.A as Administrative Agent, Issuing Lender, and Swing Line Lender, Avenue CLO

Fund, Ltd., Avenue CLO II, Ltd., Avenue CLO III, Ltd., Avenue CLO IV, Ltd., Avenue CLO V,

Ltd., Avenue CLO VI, Ltd., Babson CLO Ltd. 2004-I, Babson CLO Ltd. 2004-II, Babson CLO

Ltd. 2005-I, Babson CLO Ltd. 2005-II, Babson CLO Ltd. 2005-III, Babson CLO Ltd. 2006-I,

Babson CLO. Ltd. 2006-II, Babson CLO Ltd. 2007-I, Artus Loan Fund 2007-I Ltd., Babson

Loan Opportunity CLO, Ltd., Jfin CLO 2007 Ltd., Sapphire Valley CDO I, Ltd., Jefferies

Finance CP Funding LLC, Brigade Leveraged Capital Structures Fund, Ltd., Battalion CLO

2007-I Ltd., Canyon Capital Advisors, LLC, Caspian Corporate Loan Fund, LLC, Caspian

---

[1] This Complaint is being Amended to add three (3) Defendants erroneously left out of the original Complaint.  The added Defendants are: Carlyle High Yield Partners X, Ltd., Venture VI CDO Limited and Venture VII CDO Limited.  Additionally, the style has been amended to add missing Defendants.

        -4-

BERGER SINGERMAN
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

Capital Partners, L.P., Caspian Select Credit Master Fund, Ltd., Mariner Opportunities Fund, LP, Mariner LDC, Sands Point Funding Ltd, Copper River CLO Ltd., Kennecott Funding ltd., NZC Opportunities (Funding) II Limited, Green lane CLO Ltd., 1888 Fund, Ltd., Orpheus Funding LLC, Orpheus Holdings LLC,  LFC2 Loan Funding LLC, Halcyon Loan Investors CLO I Ltd., Halcyon Loan Investors CLO II ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured CLO 2006-I Ltd., Halcyon Structured Asset Management European 2008-II B.V., Halcyon Structures Asset Management CLO I Ltd., Halcyon Structured Management Long Secured/Short Unsecured 2007-I Ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured 2007-2 Ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured 2007-3 Ltd., Aberdeen Loan Funding, Ltd., Armstrong Loan Funding, Ltd., Brentwood CLO, Ltd., Eastland CLO, Ltd., Emerald Orchard Limited, Gleneagles CLO, Ltd., Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Credit Opportunities CDO, Ltd., Highland Loan Funding V, Ltd., Highland Offshore Partners, L.P., Jasper CLO, Ltd., Liberty CLO, Ltd.,  Loan Funding IV LLC, Loan Funding VII LLC, Loan Star State Trust, Longhorn Credit Funding, LLC, Red River CLO, Ltd., Rockwall CDO Ltd., Rockwall CDO II, Ltd., Southfork CLO, Ltd., Stratford CLO, Ltd., Westchester CLO, Ltd., ING Prime Rate Trust, ING Senior Income Fund, ING International (II) – Senior Bank Loans Euro., ING International (II) – Senior Bank Loans USD, ING Investment Management CLO I, Ltd., ING Investment Management CLO II, Ltd., ING Investment Management CLO III, Ltd., ING Investment Management CLO IV, Ltd., ING Investment Management CLO V, Ltd., Encore Fund LP, Nuveen Floating Rate Income Fund, Fortissimo Fund, Nuveen Floating Rate Income Opportunity Fund, Nuveen Senior Income Fund, Symphony Credit Opportunity Fund, Ltd.,

BERGER SINGERMAN
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

Symphony CLO I, Ltd., Symphony CLO II,  Ltd., Symphony CLO III, Ltd., Symphony CLO IV, Ltd., Symphony CLO V, Ltd., Carlyle High Yield Partners 2008-I, Ltd., Carlyle High Yield Partners V, Ltd., Carlyle High Yield Partners VI, Ltd., Carlyle High Yield Partners VII, Ltd., Carlyle High Yield Partners VIII, Ltd., Carlyle High Yield Partners IX, Ltd., Carlyle High Yield Partners X, Ltd., Carlyle Loan Investment, Ltd., Centurion CDO VI, Ltd., Centurion CDO VII, Ltd., Centurion CDO 8, Limited, Centurion CDO 9, Limited, Cent CDO 10 Limited, Cent CDO XI Limited, Cent CDO 12 Limited, Cent CDO 14 Limited, Cent CDO 15 Limited, Venture CDO 2002, Limited, Venture II CDO 2002, Limited, Venture III CDO Limited, Venture IV CDO Limited, Venture V CDO Limited, Venture VI CDO Limited, Venture VII CDO Limited, Venture VIII CDO Limited, Venture IX CDO Limited, Vista Leveraged Income Fund, Veer Cash Flow CLO, Limited, Duane Street CLO I, Ltd., Duane Street CLO II, Ltd., Duane Street CLO III, Ltd., Duane Street CLO IV, Ltd., Duane Street CLO V, Ltd., Jay Street Market Value CLO I, Ltd., Riva Ridge Master Fund, Ltd., Mariner LDC, and Genesis CLO 2007-I Ltd. (collectively the "Term Lenders"), Bank of America N.A as Administrative Agent, Issuing Lender, and Swing Line Lender, Bank of America, N.A., Merrill Lynch Capital Corporation, JPMorgan Chase Bank, N.A., Barclays Bank PLC, Deutsche Bank Trust Company Americas, The Royal Bank of Scotland PLC, Sumitomo Mitsui Banking Corporation, Bank of Scotland, HSN Nordbank AG, MB Financial Bank, N.A., and Camulos Master Fund, L.P. ("Revolving Lenders") and Wells Fargo N.A., as Trustee and Lender, Serengeti Asset Management, LP, MFC Global Investment Management (US) LLC, Franklin Templeton Investments, Goldman Sachs Global Special Situations Group, Eaton Vance Management Inc., Satellite Asset Management, Bank of America LLC, Prudential Investment Management-Fixed Income, Nomura Corporate

BERGER SINGERMAN
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

Research & Asset Management, DiMaio Ahmad Capital, LLC, Pioneer Investment Management, Inc., MFS Investment Management, New York Life Investment Management LLC, Regiment Capital Advisors LLC, Western Asset management Co, JPMorgan High Yield Partners, Thrivent Financial For Lutherans, BlackRock Financial Management, Inc., Denver Investment Advisors LLC, Fidelity Management & Research Co, Goldman Sachs Asset Management LP (GSAM)(USA), RiverSource Investments LLC, Federated Investors, Inc., Ares Management, LP, Deutsche Asset Management (DeAM)(NYC), Tattersall Advisory Group Inc. (Philadelphia), ING Investment Management (Atlanta), Logan Circle Partners LP, State Street Global Advisors (SSgA), UBI Pramerica SGR SpA, Barclays Capital, Inc., PPM America Inc., Brigade Capital Management, LLC, Crédit Suisse Asset Management Americas (CSAM)(NY), Allegiant Asset Management Co., FAF Advisors Inc., INVESCO Inc. (New York), Newberger Berman Management LLC and Richard Wenz ("2nd Mortgage Lenders") and John Does 1-50 representing any unknown successor lender under either the Term Loan (as hereinafter defined) Delayed Draw Loan (as hereinafter defined) or Swing Line Loan (as hereinafter defined), pursuant to Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. §§ 105 and 506.[2]  TWC alleges as follows:

## JURISDICTION

1.     This is an adversary proceeding brought by TWC for: (i) a declaration that the Subordination Agreement, as defined hereinafter, is void and unenforceable under applicable law and (ii) to determine the validity, priority and extent of TWC's lien on its own behalf and on

---

[2] In compliance with Local Rule 7003-1(D)(1) and in accordance with Federal Rule of Bankruptcy Procedure 7020(a)(2)(A), all parties herein and all relief sought arise out of the same or a series of related transactions or occurrences.

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

behalf of all construction lien holders claiming by and through the lien of TWC[3] finding that the Term Lenders, Swing Line Lenders, Revolving Lenders and 2nd Mortgage Lenders (collectively "The Lenders") liens are inferior to that of TWC in the full amount of its claim.

2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.    This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. § 157 (b)(2)(A), (K) and (O),  and this Court has taken jurisdiction of this matter by the compelled filing of this complaint in its *Second Interim Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (II) Providing Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362 and 363, of the Bankruptcy Code, and (III) Scheduling Final Hearing* [D.E. 242].

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## PROLOGUE

5.    TWC did not wish to bring this lawsuit at this time. TWC attempted to persuade the Term Lenders to not require the filing of this Adversary as a condition precedent to its consent to the Debtors use of Cash Collateral.  TWC does not wish to destabilize this case and believes that the issues raised in this complaint could have been more efficiently and effectively

---

[3] TWC expects lien holders to intervene in this action and to allay any of the concerns of the lien holders who have asserted before this Court an issue of conflict, encourage lien holders to intervene in this action; however TWC intends to fully assert its lien rights through this action on behalf of itself and  its sub-contractors.

BERGER SINGERMAN
attorneys at law            *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

resolved later and at a less fragile time in the case. TWC failed to persuade the Term Lenders[4] to eliminate the requirement that this complaint be filed on or before July 14, 2009.

## PARTIES

6.      TWC is a Nevada Corporation and the general contractor of the Project, as defined herein.

7.      Fontainebleau Las Vegas LLC ("FBLV" or "Debtor") is one of the Debtors in these Chapter 11 cases and FBLV is also a Defendant in this adversary proceeding. It owns the real estate upon which the Project is being constructed. FBLV contracted with TWC to act as general contractor for the Project.

8.      Defendant Bank of America N.A.("BOA"), is a nationally chartered bank with its main office in Charlotte, North Carolina. BOA is the Administrative Agent for the Term Lenders and the Revolving Lenders. It was the Initial Term Loan lender, the Initial Swing Line Lender, and Initial Delayed Draw Lender, as well as a Revolving Lender.

9.      Defendant Merrill Lynch Capital Corporation ("Merrill") is a Delaware corporation with a principal place of business in New York. Merrill is now indirectly owned by BOA. It is a Revolving Lender.

10.      Defendant Deutsche Bank Trust Company Americas is a New York State chartered bank with its principal office in New York, New York. It is a Revolving Lender.

11.      Defendant Barclays Bank PLC is a public limited company in the United Kingdom with its principal place of business in London, England. It is a Revolving Lender.

---

[4] TWC understands from Counsel for the Debtors that they also tried to persuade the Term Lenders to eliminate TWC's obligation to bring this lawsuit at this time without success.

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

12.    Defendant Royal Bank of Scotland PLC is a banking association organized under the laws of the United Kingdom with a branch in New York, New York. It is a Revolving Lender.

13.    Defendant Bank of Scotland is chartered under the laws of Scotland, with its principal place of business in Edinburgh, Scotland. It is a Revolving Lender.

14.    Defendant Sumitomo Mitsui Banking Corporation New York is a Japanese corporation with offices in New York, New York. It is a Revolving Lender.

15.    Defendant HSH Nordbank AG, New York Branch is a German banking corporation with a branch in New York. It is a Revolving Lender.

16.    Defendant JPMorgan Chase Bank, N.A. is a nationally chartered bank with its headquarters in  New York. It is a Revolving Lender.

17.    Defendant MB Financial Bank, N.A. is a nationally chartered bank with its main office in Chicago, Illinois.  It is a Revolving Lender.

18.    Defendant Federal Deposit Insurance Corporation as the successor to First National Bank of Nevada. First National Bank was a Revolving Lender.

19.    Defendant Wells Fargo N.A. ("Wells Fargo"), is a nationally chartered bank with its main office in Sioux Falls, South Dakota. Wells Fargo is the Trustee for the 2nd Mortgage Lenders.

20.    Brigade Capital Management  LLC is the Fund Manager for Brigade Leveraged Capital Structures Fund, Ltd.

21.    Canyon Capital Advisors LLC, is the Fund Manager for Canpartners Investments IV, LLC and Canyon Special Opportunities Master Fund (Cayman), Ltd.

2217231-1

-10-

**BERGER SINGERMAN**
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

22.     The Carlyle Group is the Fund Manager for the following Funds: Carlyle High Yield Partners 2008-I, Ltd, Carlyle High Yield Partners VI, Ltd., Carlyle High Yield Partners VII, Ltd., Carlyle High Yield Partners VIII, Ltd., Carlyle High Yield Partners IX, Ltd., Carlyle High Yield Partners X, Ltd., and Carlyle Loan Investment, Ltd.

23.     Guggenheim Investment Management, LLC is the Fund Manager for the following Funds:  Green Lane CLO Ltd., Copper River CLO Ltd., Sand Point Funding, Ltd., Kennecott Funding Ltd., 1888 Fund, Ltd., Orpheus Funding LLC, Orpheus Holdings LLC, NZC Opportunities (Funding) II Limited and LFC2 Loan Funding LLC.

24.     Halcyon Loan Investors LP and Halcyon Structures Asset Management, LP are the Fund Managers for the following Funds:  Halcyon Loan Investors CLO, Ltd., Halcyon Loan Investors CLO II Ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured CLO 2006-I Ltd., Halcyon Structured Asset Management European  2008-II B.V., Halcyon Structures Asset Management I Ltd., Halcyon Structured Management Long Secured/Short Unsecured 2007-I Ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured 2007-2 Ltd., Halcyon Structured Asset Management Long Secured/Short Unsecured 2007-3 Ltd.

25.     Highland Capital Management, LP is the Fund Manager for the following Funds: Aberdeen Loan Funding, Ltd., Armstrong Loan Funding, Ltd., Brentwood CLO, Ltd., Eastland CLO, Ltd., Emerald Orchard Limited, Gleneagles CLO, Ltd., Grayson CLO, Ltd., Greenbriar CLO, Ltd., Highland Credit Opportunities CDO, Ltd., Highland Loan Funding V, Ltd., Highland Offshore Partners, L.P., Jasper CLO, Ltd., Liberty CLO, Ltd.,  Loan Funding IV LLC, Loan Funding VII LLC, Loan Star State Trust, Longhorn Credit Funding, LLC, Red River CLO, Ltd.,

BERGER SINGERMAN
attorneys at law          Boca Raton   Fort Lauderdale   Miami   Tallahassee

Rockwall CDO Ltd., Rockwall CDO II, Ltd., Southfork CLO, Ltd., Stratford CLO, Ltd., Westchester CLO, Ltd.

26.     Avenue Capital Management II, L.P. is the Fund Manager for Avenue CLO Fund, Ltd., Avenue CLO II, Ltd., Avenue CLO III, Ltd., Avenue CLO IV, Ltd., Avenue CLO V, Ltd., Avenue CLO VI, Ltd.

27.     Babson Capital Management and Jeffries Finance LLC are the Fund Managers for for the following Funds:  Babson CLO Ltd. 2004-I, Babson CLO Ltd. 2004-II, Babson CLO Ltd. 2005-I, Babson CLO Ltd. 2005-II, Babson CLO Ltd. 2005-III, Babson CLO Ltd. 2006-I, Babson CLO. Ltd. 2006-II, Babson CLO Ltd. 2007-I, Artus Loan Fund 2007-I Ltd., Babson Loan Opportunity CLO, Ltd., Jfin CLO 2007 Ltd., Sapphire Valley CDO I, Ltd., and Jefferies Finance CP Funding LLC.

28.     DiMaio Ahmad Capital LLC is the Fund Manager for the following Funds: Duane Street CLO I, Ltd., Duane Street CLO II, Ltd., Duane Street CLO III, Ltd., Duane Street CLO IV, Ltd., Duane Street CLO V, Ltd., Jay Street Market Value CLO I, Ltd.

29.     ING Investment Management Co., along with ING Investments, LLC, ING Alternative Asset Management, LLC and ING Investment Management Luxembourg S.A. are the Fund Managers for the following Funds:  ING Prime Rate Trust, ING Senior Income Fund, ING International (II) – Senior Bank Loans Euro., ING International (II) – Senior Bank Loans USD, ING Investment Management CLO I, Ltd., ING Investment Management CLO II, Ltd., ING Investment Management CLO III, Ltd., ING Investment Management CLO IV, Ltd., ING Investment Management CLO V, Ltd.

BERGER SINGERMAN
attorneys at law                    Boca Raton    Fort Lauderdale    Miami    Tallahassee

30.      MJX Asset Management, LLC is the Fund Manager for the following Funds: Venture CDO 2002, Limited, Venture II CDO 2002, Limited, Venture III CDO Limited, Venture IV CDO Limited, Venture V CDO Limited, Venture VI CDO Limited, Venture VII CDO Limited, Venture VIII CDO Limited, Venture IX CDO Limited, Vista Leveraged Income Fund, Veer Cash Flow CLO, Limited.

31.      Ore Hill Partners LLC is the Fund Manager for Genesis CLO 2007-I, Ltd. Fund.

32.      Mariner Investment Group, LLC is the Fund Manager for Caspian Corporate Loan Fund, LLC, Caspian Capital Partners, L.P., Caspian Select Credit Master Fund, Ltd., Mariner Opportunities Fund, LP,  Mariner LDC.

33.      Riva Ridge Capital Management, LP and Mariner Investment Group, LLC are the Fund Managers for Riva Ridge Master Fund, Ltd.

34.      RiverSource Investments, LLC is the Fund Manager for Centurion CDO VI, Ltd., Centurion CDO VII, Ltd., Centurion CDO 8, Limited, Centurion CDO 9, Limited, Cent CDO 10 Limited, Cent CDO XI Limited, Cent CDO 12 Limited, Cent CDO 14 Limited, and Cent CDO 15 Limited Funds.

35.      Symphony Asset Management LLC is the Fund Manager for the Following Funds:  Encore Fund LP, Nuveen Floating Rate Income Fund, Fortissimo Fund, Nuveen Floating Rate Income Opportunity Fund, Nuveen Senior Income Fund, Symphony Credit Opportunity Fund, Ltd., Symphony CLO I, Ltd., Symphony CLO II,  Ltd., Symphony CLO III, Ltd., Symphony CLO IV, Ltd., Symphony CLO V, Ltd.

36.      Defendants all known holders of the 2nd Mortgage Notes are as follows: Serengeti Asset Management, LP, MFC Global Investment Management (US) LLC, Franklin Templeton

Investments, Goldman Sachs Global Special Situations Group, Eaton Vance Management Inc.,
Satellite Asset Management, Bank of America LLC, Prudential Investment Management-Fixed
Income, Nomura Corporate Research & Asset Management, DiMaio Ahmad Capital ,LLC,
Pioneer Investment Management, Inc., MFS Investment Management, New York Life
Investment Management LLC, Regiment Capital Advisors LLC, Western Asset management Co,
JPMorgan High Yield Partners, Thrivent Financial For Lutherans, BlackRock Financial
Management, Inc., Denver Investment Advisors LLC, Fidelity Management & Research Co,
Goldman Sachs Asset Management LP (GSAM)(USA), RiverSource Investments LLC,
Federated Investors, Inc., Ares Management, LP, Deutsche Asset Management (DeAM)(NYC),
Tattersall Advisory Group Inc. (Philadelphia), ING Investment Management (Atlanta), Logan
Circle Partners LP, State Street Global Advisors (SSgA), UBI Pramerica SGR SpA, Barclays
Capital, Inc., PPM America Inc., Brigade Capital Management, LLC, Crédit Suisse Asset
Management Americas (CSAM)(NY), Allegiant Asset Management Co., FAF Advisors Inc.,
INVESCO Inc. (New York), Newberger Berman Management LLC and Richard Wenz.

37.    Defendants John Doe 1-50 are the subsequent transferees of any portion of: (1)
the Term Loan note,  (2) the Delayed Draw note, or (3) the Swing Line note.

## ALLEGATIONS COMMON TO ALL COUNTS

38.    On June 9, 2009 (the "Petition Date"), the Debtors commenced these cases by
filing voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the
"Code") with this Court.

39.    Prior to filing their  petitions, the Debtors had been actively engaged in
construction and development of "Fontainebleau Las Vegas" (the "Project"). The Project was

2217231-1                                        -14-

**BERGER SINGERMAN**
attorneys at law            *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

conceived as a large luxury resort. It is located on approximately 24.4 acres on  the North end of the Las Vegas Strip, on land that was formerly the site of the El Rancho Hotel and the Algiers Hotel. The plans for the Project, as of the Petition Date, include a 63 story glass skyscraper, featuring: (i) 3,815 guest rooms; (ii) a 100,000 square-foot casino; (iii) 394,000 square feet of convention and meeting space; (iv) a 60,000 square-foot state of the art spa; (v) a roof top pool and (vi) a theater featuring live entertainment and shows.

40.     As of the Petition Date, the Debtors have estimated that the Project, is approximately  70% complete.

41.     On June 6, 2007, TWC entered into a construction contract with FBLV for the construction of the Project (the "Construction Contract"). The amount of the original contract was $1,761,757,004.00[5]. In addition to that sum, TWC was to be compensated for any changes or additional work that TWC was required or requested to perform in accordance with the terms of the Construction Contract. As of June 4, 2009, there is $319,295,043.70[6] of additional or changed work, materials and equipment for which payment is due. Pursuant to the Construction Contract TWC also is entitled to a fee of $62,431,561.43 and a soft cost fee of $1,466,899.76 for the construction of the Project.  After application of all payments received by TWC from FBLV as of May 31, 2009,  TWC claims a lien of 675,260,792.68[7], plus interest at a rate of 15%, as provided for under the Construction Contract, in respect of accrued and unpaid draws.

---

[5] This amount is the total contract amount, including the work done on the project itself and the work done on the "Staging Area" pursuant to section §2.4 of the Construction Contract. The breakdown of the amount is $1,753,634,074.00 for the Project and $8,122,930.00 for the Staging Area.

[6] This amount includes: $318,371,262.75 for changes to the Project and $923,780.95 for the Staging Area.

[7] The amounts claimed in the June 4, 2009 recorded lien of TWC are less than the amounts claimed herein.  TWC plans to seek consent of the Debtors, The Official Committee of Unsecured Creditors and The Lenders to record an amended lien or in the alternative file a permitted motion for limited stay relief consistent with 11 USC §§ 362(b)(3) to record an amended claim of lien.

2217231-1

**BERGER SINGERMAN**
attorneys at law          *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

42.     Pursuant to the Construction Contract, FBLV was to issue a notice to proceed with an effective date of April 1, 2007. Notice was actually issued on April 1, 2007.  Excavation and other work commenced on the Project in November 2006 and from that time the existence of construction work at the Project was open, notorious and obvious. Pursuant to the Construction Contract,  TWC was to provide and did provide "labor, materials, equipment and services" to fulfill its obligations under thereunder.

43.     The construction of a structure of this size, magnitude and luxury, as the Debtor admits in its pleadings and supporting papers, requires many hundreds if not thousands of laborers and materialmen. Most of them have left the jobsite and many of them have filed mechanics liens in accordance with Nevada law.

44.     On or about June 6, 2007 The Lenders and The Debtors closed loans[8] to fund the continued construction of the Project. ("The June 6 Loans").  As part of the June 6 Loans the Lenders required disclose of all material contracts. This included all of the contracts between TWC and its subcontractors. These subcontracts, which number more than 20, were included in the June 6 Loan closing binder.

45.     In direct reliance on the statements and documents pertaining to the issuance of the June 6 Loans, TWC continued to employ subcontractors with workers and materialmen and proceeded with the scope of work provided for under the Construction Contract. As a direct result of the Debtors inability to obtain access to the promised funds, TWC was not paid and was unable to pay its subcontractors. Consequently, on June 4, 2009, TWC filed and recorded a claim

---

[8] The loans made to the Debtors fall into four categories: (1) the Initial Term Loan of $700,000,000 (the "Term Loan"). This loan was initially funded by BOA; (2) the Delayed Draw Loan of $350,000,000 (the "Delayed Draw Loan"). This loan was initially funded by BOA; (3) the Swing Line Loan of $10,000,000 (the "Swing Line Loan"). This loan was initially funded by BOA;  and (4) the 2nd Mortgage Loan, a $675,000,000.00 issuance of notes.

BERGER  SINGERMAN
attorneys at law                    Boca Raton    Fort Lauderdale    Miami    Tallahassee

of lien in the public records of Clark County Nevada bearing Doc Number 2009060400011772, in accordance with Nevada law, for $668,990,933.27. The vast majority of this amount is for money owed to various subcontractors who have performed work for which they have not been paid because TWC, in turn, has not been paid by FBLV because its funding has been cut off.

46.     Moreover, TWC has received demand for payment from many of its subcontractors and in many instances has been sued.  The primary, if not sole, reason that TWC has been sued by its subcontractors is because of the Debtors inability to fund the Project; a situation that was ostensibly caused by the Revolving Lenders.

47.     At all times material hereto, N.R.S. 108.2453 and 108.2457 were applicable to the Project. On June 6, 2007, in contravention of these Nevada laws, the Lenders caused TWC and certain related companies along with the Debtors to enter into an "Affiliate Subordination Agreement" (the "Subordination Agreement") in favor of BOA, as Administrative Agent and Wells Fargo, as Trustee. *See Subordination Agreement* attached hereto as Exhibit A. On the same date, the Debtors and their related entities closed on the June 6 Loans.

48.     The Subordination Agreement, in paragraph 2.02, states that TWC shall not "at any time prior to the full, indefeasible performance and payment in cash of the Senior Debt and the termination or expiration of the Senior Debt Documents and the lending commitments thereunder… obtain any Lien on any assets of the Fontainebleau Companies." The Subordination Agreement further and states "Nonetheless, in the event that any such Lien exists or is any time hereafter obtained, each Fontainebleau Affiliate and each Fontainebleau Company covenants and agrees that any Lien held by such Fontainebleau Affiliate on the property of any Fontainebleau

Company, regardless of its origin, shall be subordinate… in priority, operation and effect to the priority, operation and effect of all of the Liens securing all or any part of the Senior Debt…"

49.     In conjunction with the Motion to Use Cash Collateral [D.E.12] in the Debtors' jointly administered main case ("Cash Collateral Motion"), the Debtors have acknowledged that the prepetition lenders have valid first position liens that are "not subject to avoidance, re-characterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law…"  At the insistence of the Term Lenders, paragraph 19(a) of the Second Interim Order Authorizing the Use of Cash Collateral [D.E.242] in the Debtors' jointly administered main case ("Second Cash Collateral Order") imposes a deadline of July 14, 2009, for TWC to file an action to determine the extent, priority and validity of its prepetition liens with respect to the Prepetition Agent and Prepetition Term Lenders, as those terms are defined in the Second Cash Collateral Order.

## COUNT I
## DECLARATION THAT THE SUBORDINATION AGREEMENT IS
## UNENFORCEABLE  AND OR VOID UNDER NEVADA LAW

50.     Plaintiff restates and re-alleges herein each and every allegation set forth in paragraphs 1 through 49 of this Complaint.

51.     Notwithstanding any statement in the Subordination Agreement, including section 6.03, pursuant to which the Lenders purport to make the laws of the State of New York applicable to the agreement, the law of Nevada and Florida choice of law rules require the invalidation of the Subordination Agreement pursuant to Nevada law.

52.     Nevada law, in NRS 108.2453, states that a "condition, stipulation or provision in a contract or other agreement for the improvement of property or for the construction, alteration

BERGER SINGERMAN
attorneys at law                    Boca Raton    Fort Lauderdale    Miami    Tallahassee

or repair of a work of improvement <u>in this state</u> that attempts to do any of the following is <u>contrary to public policy and is void and unenforceable</u>: -

> (c) Make the contract or other agreement subject to the laws of a state other than this state;"

53.     NRS 108.2453 by its own express terms makes it clear that any choice of law provision that applies the law of any  state other than Nevada for work that is conducted within Nevada is void and unenforceable as a matter of public policy. The statute is clear and unambiguous.

54.     Moreover, even if Florida choice of law precedent were followed, the result would be the same. Several Florida courts have recognized the applicability of Restatement of Conflicts (Second) § 187 (1988). *See e.g. Welt v. Sasson (In re Dollar Time Group),* 223 B.R. 237, 244 (Bankr. S.D. Fla. 1998); *International Ins. Co. v. Johns*, 874 F.2d 1447, 1458 (11th Cir. 1989); *Merriman v. Convergent Business Sys., Inc*., 1993 U.S. Dist. LEXIS 10528, at * 12 (M.D. Fla. 1993)(stating that "Florida courts do recognize that the strong public policy of the law of a state with a relationship to the transaction can override the parties' contractual choice of applicable law. This exception to the normal enforcement of the parties' contractual choice of law is analogous to standards set out in § 187 of the Restatement."). Restatement of Conflicts (Second) § 187 (1988) states that

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless- (b) [the] application of the law of the chosen state <u>would be contrary to a fundamental policy</u> of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

55.    The law governing mechanics' liens in Nevada states that a contract that calls for work of improvement within Nevada is "contrary to public policy and is void and unenforceable" if the contract is made subject to the laws of another state. N.R.S. 108.2453.  This legislative pronouncement that such a contract term "is contrary to public policy" is sufficient to require, under Florida choice of law provisions, that the Subordination Agreement be measured against and subsequently rendered void under Nevada law.

56.    Pursuant to Nevada Law, which governs the any mechanics' liens within that state, a contractor or subcontractor may not waive or impair their lien rights, unless very specific statutory requirements are met.

57.    Pursuant to  N.R.S. 108.2457:

> Any term of a contract that attempts to waive or impair the lien rights of a contractor, subcontractor or supplier is void. An owner, contractor or subcontractor by any term of a contract, or otherwise, may not obtain the waiver of, or impair the lien rights of, a contractor, subcontractor or supplier, except as provided in this section. Any written consent given by a lien claimant that waives or limits his lien rights is unenforceable unless the lien claimant:
>
> > a) Executes and delivers a waiver and release that is signed by the lien claimant or his authorized agent in the form set forth in this section; and
> >
> > (b) In the case of a conditional waiver and release, receives payment of the amount identified in the conditional waiver and release.

58.    Section 2.02 does not conform to the limited and permitted wavier requirements of N.R.S. 108.2457. Accordingly, to the extent Section 2.02 of the Subordination attempts to impair or subordinate TWC's statutory rights under Nevada Law to perfect and enforce its mechanic's lien, it is rendered void by N.R.S. 108.2457.

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

59.    Pursuant to 108.2453(1) "Except as otherwise provided in N.R.S. 108.221 to 108.246, inclusive, a person may not waive or modify a right, obligation or liability set for in the provisions of N.R.S. 108.221 to 108.246, inclusive."

60.    Section 2.02 of the Subordination Agreement would purport to modify and waive TWC's right to impose, perfect and enjoy its statutorily mandated priority position. This is in direct contravention of N.R.S.. 108.2453(1).  Accordingly, the Subordination Agreement is unenforceable and void with respect to TWC's mechanics' lien claim.

**WHEREFORE** TWC respectfully requests that this Court determine that the Subordination Agreement violates the relevant provisions of Nevada law and is void, in whole or in part, or in the alternative unenforceable against TWC and any claimant that claims through it and award TWC attorneys' fees and costs as permitted by the Subordination Agreement  and applicable Nevada law.

**COUNT II**
**DETERMINATION OF VALIDITY, PRIORITY AND EXTENT OF**
**TWC LIEN AGAINST THE PROPERTY**

61.    Plaintiff restates and re-alleges herein each and every allegation set forth in paragraphs 1 through 49 of this Complaint.

62.    While 11 U.S.C. §506 and Federal Rule of Bankr. P. 7001 provide the Federal statutory and procedural authority for this action, the determination of the validity, extent and priority is made by examining the relevant state law. *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450-51 (2007)(noting "the settled principle that creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code. That

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

principle requires bankruptcy courts to consult state law in determining the validity of most claims."); *accord Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)(stating that "Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.")  In this case the lien is created by operation of Nevada state law.

      a.     **TWC Meets The  Requirements Under Nevada Law to Create a Statutory Lien**

63.     The statutory liens created by N.R.S. §108.221 through §108.246  are purely creatures of statute and the right to enforce such liens emanates entirely from statutory provisions. *Lamb v. Goldfield Lucky Boy Mining Co*., 138 P. 902, 904 (Nev.1914)(Stating, while interpreting a prior similar statute "Mechanics' liens are purely creatures of statute, and the right to enforce such liens emanated entirely from statutory provisions."); *accord Bovis v. Bullock Insulation, Inc.,* 185 P.3d 1055, 1062 (Nev. 2008)(stating that a "contractor has a statutory right to a mechanic lien for the unpaid balance of the price agreed upon for labor, materials, and equipment furnished.").

64.     The creation or existence of the lien is determined by N.R.S. §108.222, which provides that "a lien claimant has a lien upon the property, any improvements for which the work, materials and equipment were furnished or to be furnished, and any construction disbursements accounts established pursuant to N.R.S. 108.2403, for:" either: (a) the unpaid balance of the price agreed upon for such work, material or equipment if the parties had agreed on the price of the work, material, or equipment; or (b) if the parties had not agreed on the price then the lien is for "an amount equal to the fair market value of such work."

2217231-1

-22-

**BERGER SINGERMAN**
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

65.    TWC has performed work on the property, furnished materials and equipment or has work, materials and equipment that are to be performed and furnished. This is sufficient, under Nevada law, to establish a valid lien under N.R.S. §108.222.

**b.    TWC'S Lien Primes Any Subsequent Mortgage Or Other Encumbrance**

66.    Pursuant to N.R.S. § 108.225:

1.    The liens provided for in N.R.S. 108.221 to 108.246, inclusive, are preferred to:

(a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.

(b) Any lien, mortgage or other encumbrance of which the lien claimant had no notice and which was unrecorded against the property at the commencement of construction of a work of improvement.

2.    Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by the liens provided for in N.R.S. 108.221 to 108.246, inclusive, after the commencement of construction of a work of improvement are subordinate and subject to the liens provided for in N.R.S. 108.221 to 108.246, inclusive, regardless of the date of recording the notices of liens.

67.    Work on the Project commenced on or about November 2006. The commencement of this work was prior to the signing and closing of the June 6 Loans. Therefore any valid mechanics' liens are superior to the liens granted to The Lenders in connection with the June 6 Loans. Pursuant to applicable Nevada law, this priority scheme holds regardless of the date of recording of the liens.

**c.    TWC Has Properly Perfected its Lien Under N.R.S. 108.226**

68.    Pursuant to N.R.S. 108.226:

1.    To perfect his lien, a lien claimant must record his notice of lien in the office of the county recorder of the county where the property or some part thereof is located in the form provided in subsection 5:

2217231-1

-23-

**BERGER SINGERMAN**
attorneys at law          *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

(a) Within 90 days after the date on which the latest of the following occurs:

> (1) The completion of the work of improvement;

> (2) The last delivery of material or furnishing of equipment by the lien claimant for the work of improvement; or

> (3) The last performance of work by the lien claimant for the work of improvement; or

(b) Within 40 days after the recording of a valid notice of completion, if the notice of completion is recorded and served in the manner required pursuant to N.R.S. 108.228.

    2.       The notice of lien must contain:

(a) A statement of the lienable amount after deducting all just credits and offsets.

(b) The name of the owner if known.

(c) The name of the person by whom he was employed or to whom he furnished the material or equipment.

(d) A brief statement of the terms of payment of his contract.
(e) A description of the property to be charged with the notice of lien sufficient for identification.

    3.       The notice of lien must be verified by the oath of the lien claimant or some other person. The notice of lien need not be acknowledged to be recorded.

    69.      TWC recorded its lien in the amount of $668,990,933.27.[9]

    70.      It was recorded on June 4, 2009. This was within 90 days after the last delivery of materials or furnishing of equipment by TWC. It was also within 90 days of the last performance of work by TWC.

---

[9] As set forth in footnote 3 above, TWC reserves the right to amend its lien.



71.     The notice of lien substantially meets all of the requirements of 108.226(2). *See* Notice attached hereto as Exhibit B.

72.     The notice of lien is verified by Robert R. Ambridge. *See* Exhibit B.

73.     Accordingly TWC's lien is properly perfected.

**d.     <u>Validity, Priority and Extent of TWC's Lien</u>**

74.     This Count seeks a determination of the validity, priority and extent of liens or interests. By way of this proceeding, Plaintiff seeks a determination of the validity, priority and extent of Plaintiff's liens against the Project.

75.     The Nevada Mechanics Liens statute  is remedial in nature. The underlying policy for the law is the "notion that contractors are generally in a vulnerable position because they extend large blocks of credit; invest significant time, labor, and materials into a project; and have any number of workers vitally depend upon them for eventual payment." *Bovis v. Bullock Insulation, Inc.,* 197 P.3d 1032, 1041 (Nev. 2008).

76.     TWC has the right to and has indeed perfected its mechanic's lien. Pursuant to 506 and applicable Nevada law.  TWC requests this Court  find its lien is superior to any other type of mortgage or encumbrance that was incurred after construction had begun.

**BERGER SINGERMAN**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

**WHEREFORE, TWC** respectfully request that this Court enter a judgment in its favor and against the Defendants:

(A)    Declaring that TWC holds a valid, perfected first priority lien and security interest  against The Project in the full amount of its lien (as may be hereafter amended), superior to the liens of The Lenders and to the interests of the Debtors.

(B)    Awarding TWC such other and further relief as would be just and proper under the circumstances, including interest, costs and attorneys' fees.

Dated:  July 20, 2009

Respectfully Submitted,

BERGER SINGERMAN
*Attorneys for Plaintiff,*
*Turnberry West Construction, Inc.*
200 South Biscayne Boulevard
10th Floor
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

By:   /s/ James D. Gassenheimer
        James D. Gassenheimer
        Florida Bar No. 95998
        JGassenheimer@bergersingerman.com
        Isaac M. Marcushamer
        Florida Bar No. 0060373
        imarcushamer@bergersingerman.com
        Paul Steven Singerman
        Florida Bar Number 378860
        Singerman@bergersingerman.com

BERGER SINGERMAN
attorneys at law                *Boca Raton    Fort Lauderdale    Miami    Tallahassee*