UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

FONTAINEBLEAU LAS VEGAS                          Case No. 09-21481-BKC-AJC
HOLDINGS, LLC, et al.,                           Chapter 11
                                                 (Jointly Administered)

       Debtors.

_____/

TURNBERRY WEST CONSTRUCTION, INC.,

       Plaintiff,

vs.                                              Adv. Pro No. 09-01762-BKC-AJC-A

FONTAINEBLEAU LAS VEGAS HOILDINGS, LLC;
AVENUE  CLO FUND, LTD.; AVENUE  CLO II, LTD.;
AVENUE  CLO III, LTD.; AVENUE  CLO IV, LTD.;
AVENUE  CLO V, LTD.; AVENUE  CLO VI, LTD.;
BABSON  CLO LTD. 2004-I; BABSON CLO  LTD. 2004-II;
BABSON CLO LTD. 2005-I; BABSON CLO LTD. 2005-II;
BABSON CLO LTD. 2005-III; BABSON  CLO LTD. 2006-I;
BABSON  CLO LTD. 2006-II; BABSON  CLO LTD. 2007-I;
ARTUS LOAN FUND 2007-I LTD.; BABSON LOAN
OPPORTUNITY , LTD.; JFIN  2007 LTD.;
SAPPHIRE VALLEY CDO I, LTD.; JEFFRIES FINANCE
CP FUNDING LLC; BRIGADE LEVERAGED CAPITAL
STRUCTURES FUND, LTD.; BATTALION  2007-I LTD.;
CANYON CAPITAL ADVISORS, LLC; CASPIAN COR-
PORATE LOAN FUND, LLC; CASPIAN CAPITAL PART-
NERS, L.P.; CASPIAN SELECT CREDIT MASTER FUND, LTD.;
MARINER OPPORTUNITIES FUND, LP; SANDS POINT
FUNDING LTD.; COPPER RIVER  LTD.; KENNECOTT
FUNDING LTD.; NZC OPPORTUNITIES (FUNDING) II, LTD;
GREEN LANE  LTD.; 1888 FUND LTD.; ORPHEUS
FUNDING LLC; ORPHEUS HOLDINGS LLC; LFC2 LOAN
FUNDING LLC; HALCYON LOAN INVESTORS  I LTD.;
HALCYON LOAN INVESTORS CLO II LTD.; HALCYON
STRUCTURED ASSET MANAGEMENT LONG SECURED/
SHORT UNSECURED CLO 2006-I LTD.; HALCYON
STRUCTURED ASSET MANAGEMENT EUROPEAN

BERGER SINGERMAN
attorneys at law                    Boca Raton   Fort Lauderdale   Miami   Tallahassee

2008-II B.V.; HALCYON STRUCTURED ASSET MANA-
GEMENT CLO  I LTD.; HALCYON STRUCTURED ASSET
MANAGEMENT LONG SECURED/SHORT UNSECURED
2007-I LTD.; HALCYON STRUCTURED ASSET MANA-
GEMENT LONG SECURED/SHORT UNSECURED 2007-2 LTD.;
HALCYON STRUCTURED ASSET MANAGEMENT LONG
SECURED/SHORT UNSECURED 2007-3 LTD.; ABERDEEN
LOAN FUNDING, LTD.; ARMSTRONG LOAN FUNDING,
LTD.; BRENTWOOD CLO LTD.; EASTLAND CLO, LTD.;
EMERALD ORCHARD LTD.; GLENEAGLES CLO, LTD.;
GRAYSON CLO, LTD.; GREENBRIAR CLO, LTD.;
HIGHLAND CREDIT OPPORTUNITIES CDO, LTD.;
HIGHLAND LOAN FUNDING V, LTD.;  HIGHLAND
OFFSHORE PARTNERS, L.P.; JASPER CLO, LTD.;
LIBERTY CLO, LTD.; LOAN FUNDING IV LLC; LOAN
FUNDING VII LLC; LOAN STAR STATE TRUST;
LONGHORN CREDIT FUNDING, LLC; RED RIVER CLO,
LTD.; ROCKWALL CDO LTD; ROCKWALL CDO II, LTD.;
SOUTHFORK CLO, LTD.; STRATFORD CLO, LTD.;
WESTCHESTER CLO, LTD.; ING PRIME RATE TRUST;
ING SENIOR INCOME FUND; ING INTERNATIONAL (II) –
SENIOR BANK LOANS EURO; ING INTERNATIONAL (II) –
SENIOR BANK LOANS USD; ING INVESTMENT MANA-
GEMENT  CLO I, LTD.; ING INVESTMENT MANAGEMENT
 CLO II, LTD.; ING INVESTMENT MANAGEMENT CLO III,
LTD.; ING INVESTMENT MANAGEMENT  CLO IV, LTD.;
ING INVESTMENT MANAGEMENT CLO V, LTD.;
ENCORE FUND LP; NUVEEN FLOATING RATE INCOME
FUND; FORTISSIMO FUND; NUVEEN FLOATING RATE
INCOME OPPORTUNITY FUND; NUVEEN SENIOR INCOME
FUND; SYMPHONY CREDIT OPPORTUNITY FUND, LTD.;
SYMPHONY CLO I, LTD.; SYMPHONY CLO II, LTD.,
SYMPHONY CLO III, LTD.; SYMPHONY CLO IV, LTD.;
SYMPHONY CLO V, LTD.; CARLYLE HIGH YIELD
PARTNERS 2008-I,LTD.; CARLYLE HIGH YIELD
 PARTNERS V, LTD.; CARLYLE HIGH YIELD PARTNERS
 VI, LTD.; CARLYLE HIGH YIELD PARTNERS VII, LTD.;
CARLYLE HIGH YIELD PARTNERS VIII, LTD.;
CARLYLE HIGH YIELD PARTNERS IX, LTD.; CARLYLE
HIGH YIELD PARTNERS X, LTD.; CARLYLE LOAN
INVESTMENT, LTD.; CENTURION CDO VI, LTD.;
CENTURION CDO VII, LTD.; CENTURION CDO 8, LIMITED;
CENTURION CDO 9, LIMITED; CENT CDO 10 LIMITED;
CENT CDO XI, LIMITED; CENT CDO 12, LIMITED;

B E R G E R   S I N G E R M A N
attorneys at law                    *Boca Raton   Fort Lauderdale   Miami   Tallahassee*

CENT CDO 14, LIMITED; CENT CDO 15, LIMITED;
VENTURE CDO 2002 LIMITED; VENTURE II CDO
2002, LIMITED; VENTURE III CDOLIMITED;
VENTURE IV CDO LIMITED; VENTURE
V CDO LIMITED; VENTURE VI CDO LIMITED;
VENTURE VII CDO LIMITED; VENTURE VIII CDO
LIMITED; VENTURE IX CDO LIMITED; VISTA
LEVERAGED INCOME FUND; VEER CASH FLOW,
LIMITED; DUANE STREET CLO I, LTD.; DUANE
STREET CLO II, LTD.;DUANE STREET CLO III, LTD.;
DUANE STREET CLO IV, LTD.; DUANE STREET CLO
V, LTD.; JAY STREET MARKET VALUE  I, LTD.;
RIVA RIDGE MASTER FUND, LTD.; MARINER LDC;
GENESIS CLO 2007-I LTD.; BANK OF AMERICA, N.A.;
MERRILL LYNCH CAPITAL CORPORATION;
JPMORGAN CHASE BANK, N.C.; BARCLAYS BANK
PLC; DEUTSCHE BANK TRUST COMPANY AMERICAS;
THE ROYAL BANK OF SCOTLAND PLC; SUMITOMO
MITSUI BANKING CORPORATION; BANK OF SCOTLAND;
HSF NORDBANK AG; MB FINANCIAL BANK, N.A.;
CAMULOS MASTER FUND, L.P.; SERENGETI ASSET
MANAGEMENT, LP; MFC GLOBAL INVESTMENT
MANAGEMENT (US) LLC; FRANKLIN TEMPLETON
INVESTMENTS; GOLDMAN SACHS GLOBAL SITUA-
TIONS GROUP; EATON VANCE MANAGEMENT INC.;
SATELLITE ASSET MANAGEMENT; BANK OF AMERICA
LLC; PRUDENTIAL INVESTMENT MANAGEMENT-FIXED
INCOME; NOMURA CORPORATE RESEARCH & ASSET
MANAGEMENT; DIMAIO AHMAD CAPITAL LLC;
PIONEER INVESTMENT MANAGEMENT INC.;
MFS INVESTMENT MANAGEMENT; NEW YORK LIFE
INVESTMENT MANAGEMENT LLC; REGIMENT CAPITAL
ADVISORS LLC; WESTERN ASSET MANAGEMENT CO.
(WAMCO); JPMORGAN HIGH YIELD PARTNERS;
THRIVENT FINANCIAL FOR LUTHERANS; BLACKROCK
FINANCIAL MANAGEMENT INC.; DENVER INVESTMENT
ADVISORS LLC; FIDELITY MANAGEMENT & RESEARCH;
GOLDMAN SACHS ASSET MANAGEMENT LP (GSAM)(USA);
RIVERSOURCE INVESTMENTS LLC; FEDERAL INVESTORS
INC.; ARES MANAGEMENT, LP; DEUTSCHE ASSET
MANAGEMENT (DEAM) (NYC); TATTERSALL ADVISORY
GROUP INC (PHILADELPHIA); ING INVESTMENT MANA-
GEMENT LLC (ATLANTA); LOGAN CIRCLE PARTNERS LP;
STATE STREET GLOBAL ADVISORS (SSGA); UBI

PRAMERICA SRG SPA; BARCLAYS CAPITAL, INC.;
PPM AMERICA, INC.; BRIGADE CAPITAL MANA-
GEMENT, LLC; CREDIT SUISSE ASSET MANA-
GEMENT AMERICAS (CSAM)(NY); ALLEGIANT
ASSET MANAGEMENT CO.; FAF ADVISIORS,
INC.; INVESCO INC (NEW YORK);
NEWBERGER BERMAN MANAGEMENT LLC;
RICHARD WENZ, and JOHN DOE 1-50,

     Defendants.

_____/

### NOTICE OF FILING EXHIBITS TO AMENDED COMPLAINT [D.E. NO. 7] FOR DECLARATION THAT: (I) THE CERTAIN SUBORDINATION AGREEMENT BY AND BETWEEN TURNBERRY WEST CONSTRUCTION, INC AND THE DEBTORS' LENDERS IS VOID AND UNENFORCEABLE, AND (II) TO  DETERMINE THE STATUTORY LIEN OF TURNBERRY WEST CONSTRUCTION, INC ON ITS OWN BEHALF AND ON BEHALF OF ALL LIEN HOLDERS CLAIMING BY AND THROUGH THE LIEN OF TURNBERRY WEST CONSTRUCTION, INC IS A VALID LIEN SUPERIOR TO THE LIENS OF THE LENDERS

     Plaintiff, Turnberry West Construction, Inc. ("TWC"), by and through undersigned counsel, hereby files the attached exhibits to the *Amended Complaint For Declaration That: (I) The Certain Subordination Agreement By And Between Turnberry West Construction, Inc. And The Debtors' Lenders Is Void And Unenforceable, And (II) To Determine The Statutory Lien of Turnberry West Construction, Inc. On Its Own Behalf And On Behalf Of All Lien Holders Claiming By and Through the Lien Of Turnberry West Construction, Inc. Is A Valid Lien Superior To The Liens Of The Lenders* [D.E. No. 7].

-4-

**BERGER SINGERMAN**
attorneys at law

*Boca Raton    Fort Lauderdale    Miami    Tallahassee*

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and we are in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).


Dated:  July 21, 2009

Respectfully Submitted,

BERGER SINGERMAN
*Attorneys for Plaintiff,*
*Turnberry West Construction, Inc.*
200 South Biscayne Boulevard
10th Floor
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:  (305) 714-4340

By:    /s/ James D. Gassenheimer
        James D. Gassenheimer
        Florida Bar No. 95998
        JGassenheimer@bergersingerman.com
        Isaac M. Marcushamer
        Florida Bar No. 0060373
        imarcushamer@bergersingerman.com
        Paul Steven Singerman
        Florida Bar Number 378860
        Singerman@bergersingerman.com

**B E R G E R   S I N G E R M A N**
attorneys at law                    *Boca Raton    Fort Lauderdale    Miami    Tallahassee*

# EXHIBIT "A"

## SUBORDINATION AGREEMENT

-27-

## AFFILIATE SUBORDINATION AGREEMENT
### (Las Vegas)

This **AFFILIATE SUBORDINATION AGREEMENT** (this "*Agreement*") dated as of June 6, 2007, is made by TURNBERRY WEST CONSTRUCTION, INC., a Nevada corporation ("*General Contractor*"), TURNBERRY RESIDENTIAL LIMITED PARTNER, L.P., a Delaware limited partnership ("*Completion Guarantor*"), FONTAINEBLEAU RESORTS, LLC, a Delaware limited liability company ("*Parent*"), FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC, a Nevada limited liability company ("*Las Vegas Holdings*"), FONTAINEBLEAU LAS VEGAS, LLC, a Nevada limited liability company ("*Las Vegas*"), and FONTAINEBLEAU LAS VEGAS II, LLC, a Florida limited liability company ("*Las Vegas II*" and collectively with Las Vegas, "*Borrowers*"), in favor of (a) BANK OF AMERICA, N.A. ("*Bank of America*"), as Administrative Agent (in such capacity, together with its successors and assigns or replacement in any refinancing where such replacement becomes party to the Project Lenders Intercreditor Agreement, the "*Bank Agent*") for the Lenders referred to below, and (b) WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee (in such capacity, together with its successors and assigns or replacement in any refinancing where such replacement becomes party to the Project Lenders Intercreditor Agreement, "*Trustee*"), under the Second Mortgage Indenture referred to below.

### RECITALS

1.      Pursuant to the Bank Credit Agreement of even date herewith (as amended, restated, extended, supplemented or otherwise modified from time to time including by any agreement extending the maturity thereof or restructuring any portion thereof or any refinancing thereof to the extent the agent thereunder becomes party to the Project Lenders Intercreditor Agreement, the "*Bank Credit Agreement*"), among Borrowers, the lenders from time to time parties thereto (collectively, the "*Lenders*"), and Bank Agent, the Lenders have provided certain credit facilities to Borrowers.

2.      Pursuant to the Second Mortgage Indenture dated as of June 6, 2007 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "*Second Mortgage Indenture*"), among Las Vegas Holdings, Fontainebleau Las Vegas Capital Corp., a Delaware corporation ("*Las Vegas Capital Corp.*", and collectively with Las Vegas Holdings, the "*Issuers*") Borrowers, and Trustee, Issuers have agreed to issue the Second Mortgage Notes due 2015.

3.      Pursuant to the Master Disbursement Agreement of even date herewith among Borrowers, Issuers, Fontainebleau Las Vegas Retail, LLC, a Delaware limited liability company, Bank Agent, Trustee, Lehman Brothers Holdings, Inc., and Bank of America, as Disbursement Agent (as amended, restated, extended, supplemented or otherwise modified from time to time, the "*Disbursement Agreement*"), the proceeds of certain financings for the development of the Fontainebleau Resort in Las Vegas, Nevada, including without limitation the Bank Credit Agreement and the Second Mortgage Indenture, will be disbursed.

4.      General Contractor and Las Vegas have entered into the Standard Form

W02-WEST:1BEH1\400276888.5                                   -1-

Agreement (AIA Form A114) between Owner and Contractor for Fontainebleau Las Vegas dated as of June 6, 2007 to be effective as of April 1, 2007 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "*Prime Construction Agreement*"), pursuant to which (a) General Contractor has agreed to build the Project and (b) in consideration thereof, Las Vegas has agreed to pay the Construction Fees to General Contractor.

     5.     Completion Guarantor has executed a Completion Guaranty of even date herewith in favor of the Disbursement Agent, the Trustee and the Bank Agent. In consideration thereof, Borrowers and Completion Guarantor have entered into the Credit Enhancement Fee Agreement dated as of June 6, 2007 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "*Credit Enhancement Fee Agreement*"), pursuant to which Borrowers, jointly and severally, have agreed (a) to pay the Credit Enhancement Fees to Completion Guarantor, (b) to reimburse Completion Guarantor for the Completion Guaranty Reimbursement Obligations and (c) to pay the Funds Costs to Completion Guarantor.

     6.     Parent, Las Vegas Holdings, and Borrowers have entered into the Reimbursement Agreement dated as of June 6, 2007 to be effective as of January 1, 2007 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "*Reimbursement Agreement*"), pursuant to which Las Vegas Holdings and Borrowers have agreed to reimburse Parent for Allocated Overhead Expense.

     7.     Subject to the terms and conditions hereof, each of the Fontainebleau Affiliates has agreed to subordinate its rights to receive certain payments under the Affiliate Agreements to payment of the indebtedness of Borrowers and Issuers under the Bank Credit Agreement and the Second Mortgage Indenture.

**NOW, THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE 1.
### DEFINITIONS

**SECTION 1.01.** *Definitions.* Any capitalized terms used in this Agreement (including without limitation the preamble and recitals hereto) which are not otherwise defined herein shall have the respective meanings ascribed to such terms in the Disbursement Agreement. For purposes of this Agreement (including without limitation the preamble and recitals hereto), the following terms shall have the meanings set forth below:

"*Affiliate Agreements* " means, collectively, the Prime Construction Agreement, the Credit Enhancement Fee Agreement, and the Reimbursement Agreement.

"*Allocated Overhead Expense*" has the meaning set forth in the Bank Credit Agreement.

"*Applicable Representative*" means (1) until the Senior Debt in respect of the Bank Credit Agreement has been repaid in full in cash and all other obligations under the Bank Credit

Agreement have been fully performed, Bank Agent and (2) after payment in full in cash of all Senior Debt under the Bank Credit Agreement but prior to payment in full in cash of all Senior Debt under the Second Mortgage Indenture, Trustee.

"*Completion Guaranty Reimbursement Obligations*" has the meaning set forth in the Bank Credit Agreement.

"*Construction Fees*" has the meaning set forth in the Bank Credit Agreement.

"*Credit Enhancement Fees*" has the meaning set forth in the Bank Credit Agreement.

"*Disbursement Condition Advances*" has the meaning set forth in the Credit Enhancement Fee Agreement.

"*Fontainebleau Affiliates*" means, collectively, General Contractor, Completion Guarantor, and Parent.

"*Fontainebleau Companies*" means, collectively, Las Vegas Holdings and its present and future subsidiaries.

"*Funds Costs*" has the meaning set forth in the Bank Credit Agreement

"*Loan Documents*" has the meaning set forth in the Bank Credit Agreement.

"*Obligations*" means any principal, interest, penalties, fees, indemnifications, reimbursements, damages, liabilities and other obligations payable of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising under the documentation governing any Indebtedness (including, without limitation, interest accruing at the then applicable rate provided in such documentation after the maturity of such Indebtedness and interest accruing at the then applicable rate provided in such documentation after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), fees, premiums, if any, charges, expenses, attorneys' fees and accountants fees, and all renewals, extensions, refinancings, refundings, amendments, restatements, supplements, and modifications of all of the foregoing obligations.

"*Representative*" means (a) with respect to Senior Debt under the Bank Credit Agreement, Bank Agent under the Bank Credit Agreement, and (b) with respect to Senior Debt under the Second Mortgage Indenture, Trustee under the Second Mortgage Indenture.

"*Senior Creditors*" means, collectively, the Applicable Representative, Representatives, the holders of any Senior Debt, and their respective successors and assigns.

"*Senior Debt*" means all Obligations under the Senior Debt Documents.

"*Senior Debt Documents*" means, collectively, the Second Mortgage Indenture, Second

Mortgage Notes, the Second Mortgage Notes Purchase Agreement, the Second Mortgage Security Documents, the Bank Credit Agreement, the other Loan Documents, and the other documents that from time to time evidence any Obligations thereunder or secure or support payment or performance thereof.

"*Senior Default*" means a Default or Event of Default under any of the Senior Debt Documents.

"*Specified Cash Management Agreement*" has the meaning set forth in the Bank Credit Agreement.

"*Specified Hedge Agreement*" has the meaning set forth in the Bank Credit Agreement.

"*Subordinated Obligations*" means, collectively, (a) all Obligations of the Fontainebleau Companies relating to the payment of Construction Fees, (b) all Obligations of the Fontainebleau Companies relating to the payment of the Credit Enhancement Fees, Funds Costs and the Completion Guaranty Reimbursement Obligations, (c) all Obligations of the Fontainebleau Companies relating to the payment of Allocated Overhead Expense, and (d) all Obligations of the Fontainebleau Companies under any instrument, agreement or other document which secures or otherwise supports any of the Obligations described in clauses (a), (b) or (c) above.

"*Title Indemnity Amount*" shall have the meaning set forth in the Credit Enhancement Fee Agreement.

**SECTION 1.02.  *Other Definitional Provisions.*** Any term used to define any Person shall be deemed to include any and all successors and assigns of such Person.

## ARTICLE 2.
## SUBORDINATION

**SECTION 2.01.  *Agreement to Subordinate.*** Each of the Fontainebleau Affiliates hereby agrees that the Subordinated Obligations are subordinated, to the extent and in the manner provided in this Article 2, to the full, indefeasible performance and payment in cash of all Senior Debt (whether outstanding on the date hereof or hereafter created, incurred, assumed or guaranteed) but other than (x) contingent reimbursement or indemnification obligations which by their express terms survive the Senior Debt Documents and (y) obligations under Specified Hedge Agreements and Specified Cash Management Agreements that, at such times of payment, are allowed by the terms thereof to remain outstanding, and that the subordination is for the benefit of Senior Creditors.

**SECTION 2.02.  *Liens.*** Notwithstanding any provisions of this Agreement or any Affiliate Agreement to the contrary, no Fontainebleau Affiliate shall, at any time prior to the full, indefeasible performance and payment in cash of the Senior Debt and the termination or expiration of the Senior Debt Documents and the lending commitments thereunder (other than (x) contingent reimbursement or indemnification obligations which by their express terms survive the Senior Debt Documents and (y) obligations under Specified Hedge Agreements and

Specified Cash Management Agreements that, at such times of payment, are allowed by the terms thereof to remain outstanding), obtain any Lien on any assets of the Fontainebleau Companies. Nonetheless, in the event that any such Lien exists or is at any time hereafter obtained, each Fontainebleau Affiliate and each Fontainebleau Company covenants and agrees that any Lien held by such Fontainebleau Affiliate on the property of any Fontainebleau Company, regardless of its origin, shall be subordinate, junior and inferior and postponed in priority, operation and effect to the priority, operation and effect of all of the Liens securing all or any part of the Senior Debt, notwithstanding the perfection, order of perfection or failure to perfect or failure to maintain the perfection of any such Lien or the filing or recording, order of filing or recording or failure to file or record any instrument or other document in any filing or recording office in any jurisdiction.

**SECTION 2.03.** *Permitted Payments.* Notwithstanding any provision of any Affiliate Agreement to the contrary, each Fontainebleau Affiliate and each Fontainebleau Company agrees that the Subordinated Obligations shall accrue but no payment of any Subordinated Obligations shall be made or received directly or indirectly, and none of the Fontainebleau Affiliates shall exercise any right of set-off or recoupment with respect to any Subordinated Obligations, provided that the Fontainebleau Affiliates may receive, and the Fontainebleau Companies may make, payments on account of the Subordinated Obligations:

      (a)    if all Senior Debt has been fully and indefeasibly performed and paid in cash and each of the Senior Debt Documents and each of the lending commitments thereunder has expired or been terminated (in each case other than with respect to (x) contingent reimbursement or indemnification obligations which by their express terms survive the Senior Debt Documents and (y) obligations under Specified Hedge Agreements and Specified Cash Management Agreements that, at such times of payment, are allowed by the terms thereof to remain outstanding);

      (b)    if such payments are then permitted under the terms of the Bank Credit Agreement; or

      (c)    if the Bank Credit Agreement no longer exists and no event of default existed at the time of the payoff of the Bank Credit Agreement or was directly caused thereby.

**SECTION 2.04.** *Liquidation; Dissolution; Bankruptcy.* Upon any distribution to creditors of any of the Fontainebleau Companies in a liquidation or dissolution of any of the Fontainebleau Companies or in a bankruptcy, reorganization, insolvency, receivership or similar proceeding relating to any of the Fontainebleau Companies, its property or its operations, in an assignment for the benefit of creditors or any marshaling of any of the Fontainebleau Companies' assets and liabilities:

      (a)    Senior Creditors will be entitled to receive payment in full of all outstanding Senior Debt (including interest after the commencement of any bankruptcy proceeding at the rate specified in the applicable Senior Debt Documents) before any Fontainebleau Affiliate will be entitled to receive any payment of all or any portion of the

Subordinated Obligations; and

(b)    until all Senior Debt (as provided in clause (a) above) is paid in full (other than (x) contingent reimbursement or indemnification obligations which by their express terms survive the Senior Debt Documents and (y) obligations under Specified Hedge Agreements and Specified Cash Management Agreements that, at such times of payment, are allowed by the terms thereof to remain outstanding), any payments of the Subordinated Obligations to which any Fontainebleau Affiliate would be entitled but for this Article 2 will be made to the Applicable Representative.

**SECTION 2.05.** *Pay Over of Distributions.* In the event that any Fontainebleau Affiliate receives any payment of all or any portion of the Subordinated Obligations at a time that such payment is prohibited by this Agreement, such payment will be held by such Fontainebleau Affiliate, in trust for the benefit of, and will be paid forthwith over and delivered, upon written request, to the Applicable Representative for handling in accordance with the Intercreditor Agreements. No Fontainebleau Affiliate shall be a fiduciary or an agent of any of the Senior Creditors by virtue of any provision of this Agreement.

**SECTION 2.06.** *Application of Amounts Received by Applicable Representative.* This Article 2 defines the relative rights of Senior Creditors. Nothing in this Agreement will:

(a)    impair, as between the Fontainebleau Companies and the Fontainebleau Affiliates, the obligation of the Fontainebleau Affiliates, which is absolute and unconditional, to pay the Subordinated Obligations in accordance with the terms of the Affiliate Agreements; or

(b)    affect the relative rights of the Fontainebleau Affiliates and creditors of the Fontainebleau Companies other than their rights in relation to Senior Creditors.

**SECTION 2.07.** *Subordination May Not Be Impaired.* No right of any Senior Creditor to enforce the subordination of the Subordinated Obligations and other agreements contained herein may be impaired by any act or failure to act by any of the Fontainebleau Affiliates or any of the Fontainebleau Companies or by the failure of any of the Fontainebleau Affiliates or any of the Fontainebleau Companies to comply with this Agreement.

**SECTION 2.08.** *Distribution or Notice to Representative.* Whenever a notice is to be given to Senior Creditors pursuant to this Agreement, the notice shall be given to the Representative of such Senior Debt in accordance with Section 6.04. Upon any payment or distribution of assets of any of the Fontainebleau Companies referred to in this Article 2, the Fontainebleau Affiliates will be entitled to rely upon any order or decree made by any court of competent jurisdiction or upon any certificate of the Applicable Representative or the liquidating trustee or agent or other Person making any distribution to the Fontainebleau Affiliates for the purpose of ascertaining the Persons entitled to participate in such distribution, Senior Creditors and other Indebtedness of such Fontainebleau Company, the amount thereof or payable thereon, the amount or amounts paid or distributed thereon and all other facts pertinent thereto or to this

Article 2.

**SECTION 2.09.** *Interest on Obligations under the Affiliate Agreements.* The Fontainebleau Affiliates agree that, notwithstanding any provision of the Affiliate Agreements to the contrary, (i) none of the Subordinated Obligations shall accrue interest if not paid when due other than the obligation of the Fontainebleau Companies to reimburse Completion Guarantor for the Completion Guaranty Reimbursement Obligations, Disbursement Condition Advances and Title Indemnity Amount , which shall accrue interest at the rate of 10% per annum pursuant to the Credit Enhancement Fee Agreement, and (ii) none of the obligations under the Affiliate Agreements shall accrue interest for any period prior to the date hereof.   It is acknowledged that the obligations of the Fontainebleau Companies to make payments under any of the Affiliate Agreements which are not Subordinated Obligations shall bear interest following the date hereof for any period in which they are not paid when due in accordance with the terms of the Affiliate Agreements.

## ARTICLE 3.
## FORBEARANCE BY FONTAINEBLEAU AFFILIATES.

Until the Senior Debt is fully and indefeasibly performed and paid in full, in cash, and the Senior Debt Documents and each of the lending commitments thereunder are terminated or expire (in each case other than with respect to (x) contingent reimbursement or indemnification obligations which by their express terms survive the Senior Debt Documents and (y) obligations under Specified Hedge Agreements and Specified Cash Management Agreements that, at such times of payment, are allowed by the terms thereof to remain outstanding), or unless requested by the Applicable Representative, none of the Fontainebleau Affiliates shall, without the Applicable Representative's prior written consent, given in their sole and absolute discretion (subject to the Intercreditor Agreements): (a) assert, collect or enforce the Subordinated Obligations, or exercise any right of set-off; (b) exercise any right of possession of any collateral or attach, seize, or realize upon any Collateral or enforce any right, including any right under the UCC against the property of the Fontainebleau Companies; or (c) commence, or cause to commence, prosecute or participate in (other than participate in an action, once commenced, to protect and pursue its rights and remedies as, for example, exercising its rights in a bankruptcy proceeding as described in Section 5.01 hereof) any administrative, legal or equitable action against any Fontainebleau Company or any administrative, legal or equitable action that might adversely affect any Fontainebleau Company or its interest, including, without limitation, any administrative, legal or equitable action which is intended to or which results in the entry of a decree or order for relief in respect of any Fontainebleau Company under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of any Fontainebleau Company or for any substantial part of the property of the Fontainebleau Companies, the commencement by any Fontainebleau Company of a voluntary case under the Bankruptcy Code or any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or the consent by any Fontainebleau Company to the entry of an order for relief in an involuntary case under any such law, or the consent by any Fontainebleau Company to the appointment of, or taking possession by, a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) or any of them for any substantial part of the property of the

W02-WEST:1BEH1\400276888 5                        -7-

Fontainebleau Companies, or any Fontainebleau Company's admission in writing of its inability to pay its debts generally, or the making of any general assignment for the benefit of creditors, or the failure generally by any Fontainebleau Company to pay its debts as they become due, or the taking by any Fontainebleau Company of any action in furtherance of any of the foregoing.

If any Fontainebleau Affiliate, other than in accordance with this Section 3, commences, prosecutes or participates in any suit, action or proceeding against any Fontainebleau Company or takes any other action in violation of this Section 3, such Fontainebleau Company may interpose as a defense or a dilatory plea the making of this Agreement, and Senior Creditors may intervene and interpose such defense or plea in such Fontainebleau Company's name. If any Fontainebleau Affiliate, other than in accordance with this Section 3, attempts to enforce any Lien with respect to the Subordinated Obligations, the Applicable Representative, Senior Creditors or the applicable Fontainebleau Company may, by virtue of this Agreement, restrain the enforcement thereof in the name of any Senior Creditor or such Fontainebleau Company.

The Fontainebleau Affiliates shall reimburse each of Senior Creditors upon demand for all reasonable fees and expenses such Senior Creditor incurs in connection with any breach by the Fontainebleau Affiliates of this Article 3, including, but not limited to, the fees and expenses incurred in removing from any Fontainebleau Affiliate's possession Collateral held in breach of this Article 3.

Each Fontainebleau Company covenants and agrees to toll, upon any Fontainebleau Affiliate's request, the statute of limitations with respect to any action which such Fontainebleau Affiliate might bring but for the provisions of this Article 3.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES

**SECTION 4.01.** *Representations and Warranties.* Each of the Fontainebleau Affiliates and the Fontainebleau Companies which are party hereto hereby represents and warrants as follows, severally and not jointly:

(a) *Authority.* Such Person has the requisite corporate or limited liability company power and authority to execute and deliver this Agreement and to perform its obligations hereunder. The execution, delivery and performance by such Person of this Agreement have been duly approved by all necessary corporate or limited liability company action of such Person and no other corporate or limited liability company proceedings on the part of such Person are necessary to consummate the transactions contemplated by this Agreement.

(b) *Enforceability.* This Agreement has been duly executed and delivered by such Person. This Agreement is the legal, valid and binding obligation of such Person, enforceable against such Person in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or

at law).

(c)    *Affiliate Agreements.*  As of the date hereof, (i) to the best knowledge of the Fontainebleau Affiliates, each of the representations and warranties of the Fontainebleau Companies set forth in Section 4.29 of the Bank Credit Agreement are true and correct, (ii) no interest in any of the Subordinated Obligations has previously been assigned, and (iii) no Lien exists with respect to any of the Fontainebleau Affiliates' rights with respect to the Subordinated Obligations.

## ARTICLE 5.
## OTHER CONVENTS AND AGREEMENTS

**SECTION 5.01.  *Modification and Expansion of Senior Debt.***

(a)    Notwithstanding any term of the Affiliate Agreements to the contrary, Senior Creditors may (i) grant extensions of time of payment or performance of any Senior Debt, (ii) make compromises and settlements with any Fontainebleau Company and other Persons regarding any Senior Debt, and (iii) increase, expand and/or modify any Senior Debt without the consent of any Fontainebleau Affiliate, and without affecting this Agreement and their rights hereunder.  No action that Senior Creditors may take, or refrain from taking, with respect to the Senior Debt or any collateral therefor or any agreements in connection therewith, shall affect this Agreement or Senior Creditors' rights hereunder.

(b)    Each Fontainebleau Affiliate further acknowledges and agrees that it is familiar with the terms of the Senior Debt Documents, and that such Fontainebleau Affiliate shall be responsible for staying informed as to any amendments, waivers or other modifications affecting such documents, and as to the status of performance under such documents.

**SECTION 5.02.  *Subrogation.***  Each Fontainebleau Affiliate hereby agrees that no payment or distribution on account of the Senior Debt shall entitle it to exercise any rights of subrogation in respect thereof until all of the Senior Debt has been paid in full in cash and all Senior Debt Documents and all lending commitments thereunder have expired or been terminated.

**SECTION 5.03.  *Further Assurances.***  The Fontainebleau Affiliates shall mark each of the Affiliate Agreements with a legend stating, "CERTAIN OF THE OBLIGATIONS HEREUNDER ARE SUBJECT TO THE AFFILIATE SUBORDINATION AGREEMENT DATED AS OF JUNE 6, 2007, IN FAVOR OF BANK OF AMERICA, N.A., AS ADMINISTRATIVE AGENT FOR CERTAIN LENDERS AND WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR CERTAIN NOTEHOLDERS."

## ARTICLE 6.
## MISCELLANEOUS

**SECTION 6.01.** *Counterparts.* This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

**SECTION 6.02.** *Severability.* Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**SECTION 6.03.** *Choice of Law; Jurisdiction; Waivers.* This Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflicts of law or choice of law provisions thereof, other than Section 5-1401 of the New York General Obligations Law. To the fullest extent permitted by applicable law, each of the Fontainebleau Affiliates and each of the Fontainebleau Companies hereby irrevocably submits to the non-exclusive jurisdiction of any New York State court or Federal court sitting in the County of New York in respect of any suit, action or proceeding arising out of or relating to the provisions of this Agreement and irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined in any such court. The parties hereto hereby waive, to the fullest extent permitted by applicable law, any objection that they may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in any such court, and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties hereto hereby waive, to the fullest extent permitted by applicable law, any right to trial by jury with respect to any action or proceeding arising out of or relating to this Agreement.

**SECTION 6.04.** *Notices; Identities of Representatives.* All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by telecopy), and, unless otherwise expressly provided herein, shall be deemed to have been given or made when delivered, or three business days after being deposited in the mail, postage prepaid, or, in the case of telecopy notice, when received, addressed (a) in the case of Completion Guarantor, General Contractor and Parent, as follows, and (b) in the case of each other party hereto, at the address for notice set forth in the Disbursement Agreement:

Completion Guarantor:                     Turnberry Residential Limited Partner, L.P.
                                          19950 West Country Club Drive
                                          10th Floor
                                          Aventura, Florida 33180
                                          Attention: Mario Romine, Esquire
                                          Telephone No.:  (305) 682-4106
                                          Facsimile No.:  (305) 682-4107

General Contractor:

Turnberry West Construction, Inc.
6725 Vice Austi Parkway, Suite 380
Los Vegas, Nevada 89119
Attention: Mario Romine, Esquire
Telephone No.: (702) 836-9100
Facsimile No.: (702) 451-4454

Parent:

Fontainebleau Resorts, LLC,
2827 Paradise Road, Fourth Floor
Las Vegas, NV 89109
Attention: Whitney Thier, Esquire
Telephone No.: (702) 495-8108
Facsimile No.: (702) 495-8112

A party may change its address for notices hereunder by written notice to the other parties to this Agreement. Further, by written notice to the other parties to this Agreement, a Representative with respect to Senior Debt may inform the other parties to this Agreement as to a change in the identity of the Representative for such Senior Debt, and the other parties to this Agreement thereafter shall have the right to treat the successor Representative identified in such notice as the Representative with respect to such Senior Debt.

**SECTION 6.05.** *Attorneys' Fees and Costs.* In the event of a dispute hereunder, if any party refers this Agreement to an attorney to continue or enforce the provisions of this Agreement, the prevailing party in any such dispute shall be entitled to an award of all costs and expenses (including attorneys' fees) incurred in connection with the dispute.

*[Signature Page Follows]*

**IN WITNESS WHEREOF,** the parties hereto have caused this Affiliate Subordination Agreement to be executed by their respective officers or authorized signatories thereunto duly authorized, as of the date first written above.

TURNBERRY RESIDENTIAL LIMITED
PARTNER, L.P., a Delaware limited partnership

By:    Soffer GP, LLC, a Delaware limited liability
        company and its General Partner

        By: _____
        Name: _Jeffrey Soffer_
        Title: _Partner_

TURNBERRY WEST CONSTRUCTION, INC.,
a Nevada corporation

By: _____
Name: _____
Title: _____

FONTAINEBLEAU RESORTS, LLC,
a Delaware limited liability company

By: _____
Name: _Jeffrey Soffer_
Title: _Executive Chairman_

[Affiliate Subordination Agreement]

**IN WITNESS WHEREOF**, the parties hereto have caused this Affiliate Subordination Agreement to be executed by their respective officers or authorized signatories thereunto duly authorized, as of the date first written above.

TURNBERRY RESIDENTIAL LIMITED
PARTNER, L.P., a Delaware limited partnership

By:    Soffer GP, LLC, a Delaware limited liability
       company and its General Partner

       By:    _____
       Name:  _____
       Title: _____


TURNBERRY WEST CONSTRUCTION, INC.,
a Nevada corporation

By:    _____
Name:  JEFFREY SOFFER
Title: Authorized Signatory


FONTAINEBLEAU RESORTS, LLC,
a Delaware limited liability company

By:    _____
Name:  _____
Title: _____

[Affiliate Subordination Agreement]

FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC,
a Nevada limited liability company

By: Fontainebleau Resort Properties I, LLC,
    its Managing Member

    By: Fontainebleau Resort Holdings, LLC,
        its Managing Member

        By:  Fontainebleau Resorts, LLC,
            its Managing Member

        By:
        Name: Jeffrey Soffer
        Title:  Executive Chairman


FONTAINEBLEAU LAS VEGAS, LLC,
a Nevada limited liability company

and

FONTAINEBLEAU LAS VEGAS II, LLC,
a Florida limited liability company

By: Fontainebleau Las Vegas Holdings, LLC,
    Managing Member of each of the foregoing

    By: Fontainebleau Resort Properties I, LLC,
        its Managing Member

        By: Fontainebleau Resort Holdings, LLC,
            its Managing Member

            By:  Fontainebleau Resorts, LLC,
                its Managing Member

            By:
            Name: Jeffrey Soffer
            Title:  Executive Chairman

[Affiliate Subordination Agreement]

BANK OF AMERICA, N.A.,
as Administrative Agent

By: _____
Name: _____Ronaldo Naval_____
Title: _____Vice President_____


WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Trustee


By: _____
Name: _____
Title: _____


[Affiliate Subordination Agreement]

BANK OF AMERICA, N.A.,
as Administrative Agent

By: _____
Name: _____
Title: _____

WELLS FARGO BANK, NATIONAL ASSOCIATION,
as Trustee

By: _____
Name: _____
Title: _____

*ACCT. COPY*
*TO BE FILED by RRA*
*6/3/09*

## NOTICE OF MECHANIC'S LIEN

The undersigned claims a lien upon the property described in this notice for work, materials or equipment furnished or to be furnished for the improvement of the property:

1. The amount of the original contract is: $1,753,634,074.00.
2. The total amount of all additional or changed work, materials and equipment, if any is: $376,193,080.51.
3. The total amount of payments received to date is: $1,460,836,221.24.
4. The amount of the lien, after deducting all just credits and offsets, is: $668,990,933.27.
5. The name of the owner, if known, of the property is: Fontainebleau Las Vegas, LLC.
6. The name of the person by whom the lien claimant was employed or to whom the lien claimant furnished or agreed to furnish work, materials or equipment is: Fontainebleau Las Vegas, LLC.
7. A brief statement of the terms of payment of the lien claimant's contract is: Payment due within twenty-five (25) days from receipt of Payment Application or otherwise required by statute.
8. A description of the property to be charged with the lien is: Fontainebleau Las Vegas, 2777 S. Las Vegas Boulevard, Las Vegas, Nevada; APN Nos. 162-09-602-002 & 162-09-704-001, more particularly described in Exhibit "A" hereto.

DATED: June _3_, 2009

TURNBERRY WEST CONSTRUCTION, INC.

By: _____
    Name: *Robert R. Ambridge*
Title: *CEO*

**EXHIBIT "B"**

## VERIFICATION

STATE OF NEVADA      )
            ) SS.
COUNTY OF CLARK    )

I, _Robert R. Ambridge_____, being first duly sworn on oath according to law, deposes as says:

I have read the foregoing Notice of Lien, know the contents thereof, and state that the same is true of my own personal knowledge, except those matters stated upon information and belief, and, as to those matters, I believe them to be true.

DATED: June _3_, 2009      TURNBERRY WEST CONSTRUCTION, INC.

           By: _Robert H. Rumbaugh_____
              Name:
           Title: _CEO_

SUBSCRIBED AND SWORN to before me this _3rd_ day of the month of ~~May~~ JUNE, 2009.

_Kathleen T. Kuever_____
NOTARY PUBLIC IN AND FOR SAID
_Clark_ COUNTY AND STATE ~~of~~ Nevada

Kathleen T. Kuever
Notary Public
State of Nevada
Date Appointment Exp: 01-26-2011
Certificate No: 07-1492-1

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Jason C. Gless, Esq.
Wood, Smith, Henning & Berman, LLP
3801 University Ave., Suite 710
Riverside, CA 92506

LEGAL:5829-021/1238233.1



# Turnberry West Construction, Inc.

## Exhibit A

### Fontainebleau Las Vegas

Legal Description
"The Site"

**Algiers Property**

That portion of the East Half (E ½) of Section 9, Township 21 South, Range 61 East, M.D.M, described as follows:

Commencing at the Northeast corner of the Southeast Quarter (SE ¼) of said Section 9;
Thence South 04°36'30" East along the East Line thereof, a distance of 208.50 feet to a point;
Thence North 88°42'15" West along the South line of that certain parcel of land conveyed by Clifford A. Jones, et al Bonanza Hotel, Inc., by Deed recorded September 01, 1948, as Instrument No. 294620, Clark County Nevada Records, a distance of 1256.11 feet to a point;
Thence North 26°29'15" East, a distance of 33.15 feet to the True Point of Beginning;
Thence continuing North 26°29'15" East, a distance of 200.39 feet to a point;
Thence North 76°55'30" West, a distance of 603.45 feet to a point on the East line of U.S. Highway No. 91 (original alignment – 80 feet wide);
Thence South 28°00' West, a distance of 340.97 feet to a point;
Thence South 88°42'15" East, a distance of 659.00 feet to the True Point of Beginning.

Excepting Therefrom that portion of said land as conveyed to the State of Nevada by Deed recorded March 15, 1951 as Document No. 365998 in Book 63 of Deeds, Page 572, of Official Records, and recorded November 21, 1951 in Book 65 of Deeds, Page 415 as Document No. 377766, Official Records.

Further Excepting Therefrom that certain tract or parcel of land situated in the County of Clark, State of Nevada and being a portion of the Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) of Section 9, Township 21 South, Range 61 East, M.D.M., Nevada, more particularly described as follows:

Commencing at the East one-quarter corner of Section 9, Township 21 South, Range 61 East;
Thence South 04°36'30" East along the East line thereof, a distance of 208.50 feet to a three-quarter inch iron pipe, said point being on the centerline of Riviera Boulevard (60 feet in width);
Thence North 88°42'15" West along said centerline, a distance of 1915.12 more or less, to a three-quarter inch iron pipe set on the East right of way line of U.S. Highway 91 (100 feet in width);
Thence North 28°00'00" East along said East right of way line, a distance of 33.58 feet to the True Point of Beginning, said point being the most Southwesterly corner of Grantor's property;
Thence Continuing North 28°00'00" East along said East right of way line, a distance of 64.82 feet;
Thence Southeasterly, and Easterly along a curve to the left, tangent to a course which bears South 28°00'00" West having a radius of 40 feet, subtending a central angle of 116°38'42", an arc length of 81.43 feet to a point on the North right of way of Riviera Boulevard (60 feet in width);
Thence North 88°38'42" West along said North line, a distance of 64.82 feet to the True Point of Beginning, as conveyed to Clark County by Deed recorded November 21, 1967 as Document No. 671884 of Official Records, Clark County Nevada.

Also described in an ALTA Survey prepared by Horizon Surveys professional land surveyors as follows:

A portion of the East Half (E ½) of Section 9, Township 21 South, Range 61 East, M.D.M., Clark County, Nevada, described as follows:



**Turnberry West Construction, Inc.**

### Algiers Property (continued)

Beginning at the Northwest corner of that parcel of land described in a Deed to Western Development, Inc., currently known as Algiers Inc., recorded in Book 71, Instrument No. 409588, Official Records of Clark County, Nevada, marked by a concrete nail and illegible tag, also being a point on the Easterly right of way of Las Vegas Boulevard and the most Westerly corner of Parcel 1, recorded in File 37 of Parcel Maps, at Page 44, Official Records of Clark County, Nevada;

Thence departing said East right of way and along the boundary of said Lot One (1), South 76°55'05" East, 592.01 feet;

Thence continuing along said boundary of Parcel 1, South 26°31'38" West, 201.07 to the North right of way of Riviera Boulevard marked by a 5/8" rebar with no cap;

Thence along the North right of way of said Riviera Boulevard, North 88°39'00" West, 581.01 feet to the beginning of a curve concave to the Northeast and having a radius of 40.00 feet;

Thence along said curve through a central angle of 116°39'00", an arc length of 81.44 feet to the Easterly right of way of said Las Vegas Boulevard;

Thence along said Easterly right of way, North 28°00'00" East, 273.46 feet to the Point of Beginning.
(Deed Reference 20040716-4857)

### El Rancho Property

That portion of the Northeast Quarter (NE ¼) and that portion of the Southeast Quarter (SE ¼) of Section 9, Township 21 South, Range 61 East, M.D.B.& M., more particularly described as Parcel One (1) as shown on Parcel Map in File 37, Page 44, recorded March 22, 1982 in Book 1538, as Document No. 1497782 of Official Records, Clark County, Nevada



**Debbie Conway**
**Clark County Recorder**

CUSTOMER RECEIPT - RECORDING SERVICES

MAIL

J GLESS
3801 UNIVERSITY AVE STE 710
RIVERSIDE CA
92506

Receipt Number: T20090195952
Date/Time: 06/04/2009  11:51:03
Method Received: QUEUE
Clerk: JJF
Customer Name: TURNBERRY WEST CONSTRUCTION INC

**Document Information**

| Doc Number | Doc Type | Copy Fee | Recording Fee | RPTT | TOTAL |
|---|---|---|---|---|---|
| 200906040001772 | Mech Lien | $ 0.00 | $43.00 | $0.00 | $43.00 |

**Payment Information**

| Method of Payment | Payment Control ID | Authorized Agent | Recording Amount | GPS | CC Total |
|---|---|---|---|---|---|
| Cash | | | $45.00 | $0.00 | $45.00 |

Amount Paid to Recorder: $45.00
Less Amount Due: $43.00
Change Due: $2.00

```
Receipt/Conformed Copy
Requestor:
TURNBERRY WEST CONSTRUCTION INC
06/04/2009 11:51:03  T20090195952
Book/Instr:  20090604-0001772
Mech Lien      Page Count: 5
Fees: $18.00   N/C Fee: $25.00


Debbie Conway
Clark County Recorder
```