UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

**In re:**
**FONTAINEBLEAU LAS VEGAS**              Case No. 09-21481-BKC-AJC
**HOLDINGS, LLC, et al.,**                Chapter 11
                                          (Jointly Administered)
**Debtors.**
_____ /

**DESERT FIRE PROTECTION, A NEVADA LIMITED PARTNERSHIP, BOMBARD MECHANICAL, LLC, BOMBARD ELECTRIC, LLC, WARNER ENTERPRISES, Inc. d/b/a SUN VALLEY ELECTRIC SUPPLY Co., ABSOCOLD CORPORATION d/b/a ECON APPLIANCE, AUSTIN GENERAL CONTRACTING, POWELL CABINET and FIXTURE CO., SAFE ELECTRONICS, INC.,**

**Plaintiffs,**

**vs.**                                   Adv. Proc. No. 09-01762-BKC-AJC-A

**AVENUE FUND, LTD., et al.**

**Defendants.**
_____/

**CONTRACTOR CLAIMANTS' MOTION TO INTERVENE
IN ADVERSARY PROCEEDING**

Plaintiffs, Desert Fire Protection, a Nevada Limited Partnership, Bombard Mechanical, LLC, Bombard Electric, LLC, Warner Enterprises, Inc. d/b/a Sun Valley Electric Supply Co., Absocold Corporation d/b/a Econ Appliance, Austin General Contracting, Powell Cabinet and Fixture Co., and Safe Electronics, Inc, who collectively comprise the Contractor Claimants (the "Contractors Claimants"), by and through undersigned counsel, move pursuant to Rule 24 of the Federal Rules of Civil Procedure made applicable to this proceeding pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to intervene in the above-

1

captioned adversary proceeding (the "Motion"). In support of the Motion, the Contractor Claimants state:

## BACKGROUND

1.  On June 9, 2009, (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Title 11 of the United States Code (the "Bankruptcy Code").

2.  The facts regarding the "Fontainebleau Las Vegas" (the "Project") are well known to the Court, and the Contractor Claimants need not re-present those. Most germane to this proceeding is that the Debtors estimate that the Project is 70% complete, which means that many contractors, vendors, suppliers, and other craftsmen, including the Contractor Claimants have performed significant work on the Project to get it to this state of partial completion.

3.  On July 14, 2009, Turnberry West Construction ("TWC") filed a two count complaint against the Defendants, seeking a declaration that the Subordination Agreement between TWC and the Defendants is void and unenforceable and that TWC's lien on the Project is superior to that of the Defendants (the "Complaint"). (D.E. 1). TWC brought the Complaint at this time because the Second Interim Order Authorizing Debtors' Use of Cash Collateral (D.E. 242 in the main case) set July 14, 2009 as the deadline by which TWC had to file the Complaint.

4.  On July 20, 2009, TWC filed an Amended Complaint (D.E. 7) to add three defendants. The Amended Complaint states that "TWC expects lien holders to intervene in this action and to allay any of the concerns of the lien holders who have asserted before this Court an issue of conflict, encourage lien holders to intervene in this action; however, TWC intends to fully assert its lien rights through this action on behalf of itself and its sub-contractors." (D.E. 7, n.3, p.8). In the Amended Complaint, TWC asserts a claim of lien for $675,260,792.68 in

addition to interest at the 15% Construction Contract rate. TWC also asserts that it will seek to amend its filed lien to assert a larger amount.

5.  On July 21, 2009, the Debtors filed their *Motion for Entry of An Order Staying Adjudication of Count II of Amended Complaint*. (D.E. 13). The Debtors seek to stay determination of the validity, priority, and extent of the Defendants' liens in order to prosecute their *Mechanics' Lien Bar Date Motion* (the "Bar Date Motion") that they filed on July 22, 2009 in the main case. (D.E. 277 in the main case). The Bar Date Motion seeks to impose alternative claims and lien validation procedures on mechanics' and materialmens' lien claimants. Among these proposed procedures is a separate shorter bar date for mechanics' lien claimants and an alternative process for determining the validity, priority, and extent of mechanics' liens in lieu of those procedures already provided by Bankruptcy Rule 7001 *et seq.* The Contractor Claimants filed an objection to the Bar Date Motion (the "Objection to Bar Date Motion"), arguing that the Debtors' proposed procedures to determine the validity, priority, and extent of mechanics' lien claims cannot be approved because the Bankruptcy Rules require that any action to determine the validity, priority, and extent of a lien must be brought as an adversary proceeding according to Rule 7001. (D.E. 322). The Bar Date Motion is on the calendar for Monday, July 27, 2009 at 2:00 p.m. The Contractor Claimants will prosecute their Objection to Bar Date Motion at that time.

## FACTS SUPPORTING INTERVENTION

6.  The Contractor Claimants are subcontractors of TWC. Prior to the Petition Date, the Contractor Claimants performed significant work and supplied various fixtures, systems, and equipment for the Project. The Contractor Claimants currently assert $203,661,540.06 in mechanics' lien claims representing their collective contribution towards completion of the

3

Project. Attached hereto as **Exhibit A** is the Contractor Claimants' proposed Intervenors' Complaint, seeking a declaration that the Contractor Claimants' liens are superior to those of the Lenders. The Contractor Claimants assert that their liens are properly perfected according to Nevada Revised Statutes 108.2453 and 108.2457.[1] The liens recorded by each of the Contractor Claimants are as follows:

    A.    <u>Austin General Contracting, Inc.:</u>

7.    On June 18, 2009, Austin General Contracting, Inc. ("<u>Austin General</u>") sent Fontainebleau Las Vegas, LLC (the "<u>Debtor</u>") and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $5,783,502.20 for work, materials, and/or equipment and supplies to the Project pursuant to its contract as to the Fontainebleau Tower. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 22, 2009 to each party. Austin General filed its "Notice and Claim of Lien" for $5,783,502.20 with Book/Instr: 20090713-0004123, which was recorded in the Clark County Recorder's office in the state of Nevada on July 13, 2009.

    B.    <u>Bombard Electric, LLC:</u>

8.    On May 27, 2009 Bombard Electric, LLC ("<u>Bombard Electric</u>") sent the Debtor and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $54,647,384.66 for work provided, materials, and/or equipment described as framing related items to the apartment project located at or about 2827 Paradise Road, Las Vegas, NV 89109-5279. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about May 28, 2009. Bombard Electric filed its "Notice and Claim of Mechanic's Lien" for the amount

---

[1] The various Notices of Lien filed or sent by each of the Contractor Claimants is attached hereto as composite **Exhibit B**. The Contractor Claimants anticipate that they will file Motions for Relief from the Automatic Stay to continue to perfect or amend their liens that relate back to the date that work was commenced on the Project, pursuant to 11 U.S.C. § 546.

4

$54,647,384.66 with Book/Instr: 20090723-0000895, which was recorded in the Office of the Clark County Recorder in the state of Nevada on July 23, 2009.

9. On May 27, 2009 Bombard Electric also sent the Debtor and TWC, via certified mail, a second "Notice of Intent to Lien" demanding payment in the amount of $109,256,291.00 for work provided, materials, and/or equipment described as framing related items to the apartment project located at or about 2827 Paradise Road, Las Vegas, NV 89109-5279. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about May 28, 2009. Bombard Electric's second "Notice and Claim of Mechanic's Lien" for the amount $109,256,291.00 with Book/Instr: 20090723-0000894 was recorded in the Clark County Recorder's Office in the state of Nevada on July 23, 2009.

### C.     Bombard Mechanical, LLC:

10. On June 9, 2009 Bombard Mechanical, LLC ("Bombard Mechanical") sent the Debtor and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $9,525,710.27 for work provided, materials, and/or equipment described as Heating, Ventilation and Air Conditioning Work to the project located at or about 2827 Paradise Road, Las Vegas, NV 89109-5279. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 12, 2009. Bombard Mechanical's "Notice and Claim of Mechanic's Lien" for the amount $9,525,710.27 with Book/Instr: 20090713-0004122 was recorded by the Clark County Recorder's Office in the state of Nevada on July 13, 2009.

### D.     Desert Fire Protection, A Nevada Limited Partnership:

11. On June 1, 2009 Desert Fire Protection ("Desert Fire") sent the Debtor and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $1,693,407.00 for work provided, materials, and/or equipment described as Heating, Ventilation

and Air Conditioning Work to the Project located at or about 2827 Paradise Road, Las Vegas, NV 89109-5279. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 4, 2009. Desert Fire's "Notice and Claim of Mechanic's Lien" for the amount $1,693,407.00 with Book/Instr: 20090702-0000990 was recorded in the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

12. On June 1, 2009 Desert Fire sent the Debtor and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $12,864,953.00 for work provided, materials, and/or equipment described as Heating, Ventilation and Air Conditioning Work to the Project located at or about 2827 Paradise Road, Las Vegas, NV 89109-5279. Desert Fire's second "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 5, 2009. Desert Fire's second "Notice and Claim of Mechanic's Lien" for the amount $12,864,953.00 with Book/Instr: 20090702-0000991 was recorded in the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

13. On June 1, 2009 Desert Fire sent the Debtor and TWC, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $2,528,017.00 for work provided, materials, and/or equipment described as Heating, Ventilation and Air Conditioning Work to the Project. The third "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 5, 2009. Desert Fire's third "Notice and Claim of Mechanic's Lien" for the amount of $2,528,017.00 with Book/Instr: 20090702-0000992 was recorded by the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

E. **Warner Enterprises, Inc., d/b/a Sun Valley Electric Supply Co., Inc.:**

14. On June 8, 2009 Warner Enterprises, Inc., d/b/a Sun valley Electric Supply Co., Inc. ("Warner"), sent the Debtor and subcontractor, Conti Electric, Inc., via certified mail a

"Notice of Intent to Lien" demanding payment in the amount of $80,981.56 for work provided, materials, and/or equipment described as electrical materials and supplies to the Project. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 11, 2009. "Notice and Claim of Mechanic's Lien" for the amount $80,981.56 with Book/Instr: 20090706-0003373 was recorded in the Clark County Recorder's Office in the state of Nevada on July 6, 2009.

15. On June 8, 2009 Warner sent the Debtor and subcontractor, Conti Electric, Inc., via certified mail a "Notice of Intent to Lien" demanding payment in the amount of $379,562.34 for work provided, materials, and/or equipment described as electrical materials and supplies to the Project. Warner's second "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 11, 2009. Warner's second "Notice and Claim of Mechanic's Lien" for the amount $379,562.34 with Book/Instr: 20090706-0003372 was recorded by the Clark County Recorder's Office in the state of Nevada on July 6, 2009.

16. On June 8, 2009 Warner sent the Debtor, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $91,315.62 for work provided, materials, and/or equipment described as electrical materials and supplies to the Project. Warner's third "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 11, 2009. Warner's third "Notice and Claim of Mechanic's Lien" for the amount $91,315.62 with Book/Instr: 20090706-0003371 recorded by the Clark County Recorder in the state of Nevada on July 6, 2009.

      **F.**     <u>**Absocold Corporation d/b/a Econ Appliance:**</u>

17. On June 19, 2009 Absocold Corporation d/b/a Econ Appliance ("<u>Absocold</u>"), sent TWC and the Debtor, via certified mail, a "Notice of Intent to Lien" demanding payment in the

7

amount of $453,554.03 for work provided, materials, and/or equipment described as appliances and materials to the Project. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 23, 2009. "Notice and Claim of Mechanic's Lien" for the amount of $453,554.03 with Book/Instr: 20090713-0004125 was recorded in the Clark County Recorder's Office in the state of Nevada on July 13, 2009.

### G. Powell Cabinet and Fixture Co.:

18. Powell Cabinet and Fixture Co.'s ("Powell") "Notice of Lien" for the amount of $1,855,801.00 with Book/Instr: 20090603-0002803 was recorded by the Washoe County Recorder's Office in the state of Nevada on June 3, 2009 against TWC and the Debtor for work performed, materials, and/or equipment provided to the Project.

### H. Safe Electronics, Inc.:

19. On June 3, 2009 Safe Electronics, Inc. ("Safe"), sent TWC and the Debtor, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $669,910.10 for work provided, materials, and/or equipment described as fire alarm system to the Project. The "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 8, 2009. Safe's "Notice and Claim of Mechanic's Lien" for the amount $669,910.10 with Book/Instr: 20090702-0000989 was recorded by the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

20. On June 3, 2009 Safe sent subcontractors, TWC and the Debtor, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $923,862.05 for work provided, materials, and/or equipment described as fire alarm systems to the Project. Safe's "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 8, 2009. Safe's second "Notice and Claim of Mechanic's Lien" for the amount $923,862.05 with

8

Book/Instr: 20090702-0000987 was recorded by the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

21. On June 3, 2009 Safe sent subcontractor TWC and the Debtor, via certified mail, a "Notice of Intent to Lien" demanding payment in the amount of $2,907,288.29 for work provided, materials, and/or equipment described as fire alarm systems to the Project. Safe's second "Notice of Intent to Lien" was delivered via certified mail/return receipt on or about June 8, 2009. Safe's second "Notice and Claim of Mechanic's Lien" for the amount of $2,907,288.29 with Book/Instr: 20090702-0000989 was recorded in the Clark County Recorder's Office in the state of Nevada on July 2, 2009.

22. The Contractor Claimants assert that their liens are entitled to priority ahead of those of the Lenders. Pursuant to Bankruptcy Rule 7024 and applicable Nevada law, the Contractor Claimants seek to intervene in this Adversary Proceeding to assert the priority of their liens and prove the proper perfection of their liens on their own behalf. Just as TWC was required by the Second Interim Cash Collateral Order to file its lien challenge now, the Contractor Claimants must intervene in this Adversary Proceeding to vindicate their rights despite the Debtors' attempt to erect unauthorized alternative procedures and TWC's assertion that they brought the Amended Complaint on behalf of all its subcontractors.

## **JURISDICTION**

23. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (J). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## **INTERVENTION IS WARRANTED**

### A.     The Contractor Claimants are Entitled to Intervene as of Right

24.     The Contractor Claimants are entitled to intervene as of right in this Adversary Proceeding. If the Court finds that the Contractor Claimants are not entitled to intervene as of right, then the Court should apply the factors for permissive intervention and find that the Contractor Claimants can intervene in this Adversary Proceeding.

25.     Rule 24(a) of the Federal Rules of Civil Procedure as made applicable to this proceeding by Bankruptcy Rule 7024(a) provides:

> (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Bankr.P. 7024(a).

26.     The Eleventh Circuit requires that four factor be met to establish intervention as of right:

> 1)  the application must be timely;
>
> 2)  the applicant must have an interest relating to the property or transaction which is the subject of the action;
> 3)  the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and
>
> 4)  the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit.

*Athens Lumber Co. v Federal Election Commission*, 690 F.2d 1364, 1366 (11th Cir. 1982) (citations omitted); *Summit Ridge Apartments, Ltd. v. Summit Ridge Assocs. (In re Summit Ridge Apartments, Ltd.)*, 104 B.R. 405, 409 (Bankr. N.D. Ala. 1989); *see also Gleason v.*

10

*Commonwealth Continental Health Care (In re Golden Glades Regional Med. Cntr., Ltd.)*, 147 B.R. 813, 815 (Bankr. S.D. Fla. 1992) (Cristol, J.) (holding that Section 1109(b) of the Bankruptcy Code grants an absolute, unqualified right to intervene in adversary proceedings sufficient to satisfy Rule 24(a)).

27. The Contractor Claimants are undoubtedly parties in interest in these bankruptcy cases and parties with a legal interest in this Adversary Proceeding. The Contractor Claimants are asserting $203,661,540.06 in mechanics' lien, which they assert are of first priority and ahead of the alleged liens of the Lenders. Just as TWC asserts that its lien has priority over the Lenders under Nevada law, so do the Contractor Claimants. Accordingly, the Contractor Claimants have the right to intervene in this proceeding pursuant to Bankruptcy Rule 7024(a)(1). *See Gleason*, 147 B.R. at 815.

28. Even if the Court were to find that Section 1109(b) were not sufficient to establish intervention as of right, the Contractor Claimants meet all four factors to establish that they are entitled to intervene as of right pursuant to Bankruptcy Rule 7024(a)(2). The Contractor Claimants satisfy the timeliness factor. 'Timeliness' is not a word of exactitude or of precisely measurable dimensions." *McDonald v. E.J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir.1970). It must, rather, "be determined from all the circumstances." *NAACP v. New York,* 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). A trial court must consider (a) the period of time during which the putative intervenor knew or reasonably should have known of his interest in the case before moving to intervene, (b) the degree of prejudice to the existing parties resulting from a failure to move promptly, (c) the prejudice to the would-be intervenor if his motion is denied, and (d) any unusual circumstances that affect timeliness. *Walker v. Jim Dandy*

*Co.,* 747 F.2d 1360, 1365 (11th Cir.1984) (*citing Stallworth v. Monsanto Co.,* 558 F.2d 257, 264-66 (5th Cir.1977)).

29. There can be no dispute but that this Motion is timely. TWC was forced to file its Complaint by July 14, 2009, but parties in interest, such as the Contractor Claimants, have a deadline of October 15, 2009 to file challenges to the Lenders liens. In addition, the Complaint was filed less than two weeks ago, and the Contractor Claimants are bringing this Motion shortly on the heels of the Debtors' ill-conceived Bar Date Motion. In accord with their Objection to Bar Date Motion, the Contractor Claimants appear and assert their rights in this Adversary Proceeding because it is the proper forum for and the approved procedure for challenging the Lenders' alleged liens. Moreover, no party will be prejudiced by the Contractor Claimants' intervention because this Adversary Proceeding is in its infancy, and all parties that have participated in this case to date have been on notice since the Petition Date that mechanics' lien claimants have first priority for their liens under Nevada law. Therefore, the Debtors and the Lenders knew that this Adversary Proceeding was inevitable, and that there is no good reason to delay adjudication of these claims. Accordingly, this Motion is timely.

30. The Contractor Claimants satisfy the second factor for intervention of right because they "have an interest relating to the property or transaction which is the subject of the action." "Intervention of right must be supported by [a] 'direct, substantial, legally protectable interest in the proceeding.' In essence, the intervenor must be at least a real party in interest in the transaction which is the subject of the proceeding." *Athens Lumber*, 690 F.2d 1364, 1366 (11th Cir.1982) (*citing Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971) ("significantly protectable interest")) (other citations omitted); *see also Worlds v. Dept. of Health and Rehabilitative Services,* 929 F.2d 591, 593-94 (11th Cir.1991). As all parties

in this case are well-aware, perfected mechanics' lien claimants hold a first priority position under Nevada law, which is a legally cognizable interest in the proceeding. The Contractor Claimants assert that their liens are entitled to first priority, and that they "prime" the Lenders regarding their liens on the Project, which lien contest is the subject of this proceeding. Having performed work, supplied equipment, and designed integral systems for the Project, the Contractor Claimants are entitled to assert mechanics' liens on the Project. Accordingly, the Contractor Claimants "have an interest relating to the property" that satisfies the second factor toward their establishing intervention of right.

31. The Contractor Claimants satisfy the third factor because they are "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect [their] interest." If, as the Contractor Claimants argue, the Court denies the Debtors' Bar Date Motion, this Adversary Proceeding will be "ground zero" for all parties in interest to challenge the Lenders' alleged liens. Accordingly, as a "practical matter," the Contractor Claimants must intervene in this proceeding to vindicate their rights. An adverse decision on the law in this Adversary Proceeding would detrimentally affect the Contractor Claimants because they are asserting their rights under the same Nevada statutes. If they are not permitted to intervene as of right, the Contractor Claimants will not be able to protect their first priority lien interests because no other party is going to establish that their liens are properly perfected or the extent of their liens.

32. The Contractor Claimants also satisfy the fourth factor because their inerests are represented inadequately by TWC. TWC has asserted that it commenced this Adversary Proceeding on behalf of all of its subcontractors, but that it encourages all affected subcontractors to intervene to the extent they seek to assert to rights on their own behalf. The

Contractor Claimants must intervene because TWC is neither competent nor incentivized to demonstrate the validity, priority, or extent of each of the Contractor Claimant's liens. TWC as the contractor for the Project has every incentive to vindicate their own rights, and because each mechanics' lien claimant will rely on similar or the same sections of the Nevada Statutes to argue their priority positions, there will necessary be some overlap in representation. Only the Contractor Claimants, however, can assert and prove their individual priority vis-à-vis the Lenders.

33.    Moreover, this is not like those situations where courts deny intervention as of right because a party has a mere interest in the proceedings, but does not have a legally protectable interest in the outcome of the proceedings. For instance, when an advocacy group attempts to intervene in a proceeding between a party and a governmental body to defend legislation or a regulation, courts view the government as adequately representing the proposed intervenor. *See, e.g., Resort Timeshare Resales, Inc. v. Stuart*, 764 F.Supp 1495, 1500 (S.D. Fla. 1991) ("Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a government body or officer charged by law with representing the interests of the proposed intervenor") (*quoting Keith v. Daley*, 764 F.2d 1265, 1270 (7th Cir. 1985)). Instead, the Contractor Claimants are like Blue Cross in *Gleason* because they have a legally protectable interest in the outcome of these proceedings. Unless they are permitted to intervene, the Contractor Claimants asserted first-priority liens could be improperly subordinated to those of the Lenders. Moreover, the threshold showing that a party must make to demonstrate that it is inadequately represented is "minimal." *See Gleason*, 147 B.R. at 816 ("Courts have held that the 'inadequate representation' requirement is met if the applicant shows that representation of his interest 'may be' inadequate, and the burden of making that showing should be treated as

14

minimal.") (*quoting Trobvich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Accordingly, the Construction Claimants are not adequately represented by the present parties to this Adversary Proceeding.

34. For the foregoing reasons, the Court should find that the Contractor Claimants meet the four factors to intervene as of right under 7024(a)(2).

### B. The Contractor Claimants are Entitled to Permissive Intervention

35. In the event that the Court denies intervention of right, the Contractor Claimants are entitled to permissive intervention pursuant to Bankruptcy Rule 7024(b). Bankruptcy Rule 7024(b) provides:

> (b)   *PERMISSIVE INTERVENTION.*
>
> (1)  *In General*. On timely motion, the Court may permit anyone to intervene who:
>   (A) is given a conditional right to intervene by a federal statute; or
>   (B) has a claim or defense that shares with the main action a common question of law or fact.
>     . . .
> (2) *Delay or Prejudice*. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

36. The Construction Claimants satisfy the requirements for permissive intervention because, as argued above, they have a claim "that shares with the main action a common question of law or fact." The Construction Claimants seek a declaration that, just like TWC, their liens have priority over the Lenders because their liens relate back to the date of commencement of construction on the Project, and their mechanics' liens have priority over the Lenders' liens under applicable Nevada law arising out of the Lenders' after-recorded Deed of Trust.

37. Moreover, the Construction Claimants have not delayed in bringing the Motion and no party will be prejudiced by their intervention. TWC's Amended Complaint was only

15

recently filed, and no responsive pleading has yet been filed by the Lenders. Moreover, the Construction Claimants are paying their own fees and costs to intervene in this proceeding, and the estate and unsecured creditors will not be prejudiced by the Construction Claimants participation. Accordingly, the Construction Claimants satisfy the requirements of Bankruptcy Rule 7024(b), and the Court should, in its discretion, permit the Construction Claimants to intervene in this Adversary Proceeding.

38.     **Notice**. The Construction Claimants will endeavor to serve this Motion on (1) the Debtors and their counsel; (2) counsel for the Unsecured Creditors Committee; (3) the Office of the United States Trustee; (4) those parties who have requested notice pursuant to Rule 2002; and (5) the Lenders that have been named as Defendants in the action. The Construction Claimants realize that the identity of all Lenders that have a stake in this proceeding has not yet been ascertained. So, the Construction Claimants will serve this Motion on those parties who are currently identified by TWC as Lenders.

WHEREFORE, the Construction Claimants respectfully request that the Court grant this Motion, allow the Construction Claimants to intervene as of right or by permission of the Court, file an intervenor complaint substantially in the form attached hereto as **Exhibit A**, and for such other and further relief as the Court deems just.

Dated: July 27, 2009.

> *I HEREBY CERTIFY* that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am qualified to practice in this Court as set forth in Local Rule 2090-1(A).

    Respectfully submitted,
    /s/ Robert Charbonneau_____
    Robert P. Charbonneau, Esq.
    Fla. Bar No. 968234
    Daniel L. Gold, Esq.
    Fla. Bar. No. 0761281
    **EHRENSTEIN CHARBONNEAU CALDERIN**
    800 Brickell Avenue, Suite 902
    Miami, Florida 33131
    T. (305) 722-2002    F. (305) 722-2001
    Counsel for Contractor Claimants